NOT DESIGNATED FOR PUBLICATION

No. 112,183

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ROBERTO S. RINCON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 23, 2015. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant, and *Roberto S. Rincon*, appellant pro se.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*: Roberto S. Rincon appeals his convictions of multiple drug charges, including manufacture of methamphetamine, possession of ephedrine with the intent to manufacture a controlled substance, possession of lithium metal with the intent to manufacture a controlled substance, possession of anhydrous ammonia with the intent to manufacture a controlled substance, and possession of drug paraphernalia with the intent to manufacture methamphetamine. Rincon claims: (1) The district court erred in denying his motions to suppress evidence; (2) the district court erred when it denied his request

1

for a continuance so he could retain counsel; (3) the district court erred when it refused to consider his untimely posttrial motions; (4) the district court improperly amended its verdict to include a finding that Rincon possessed a firearm during the commission of his drug crimes; (5) the district court erred when it denied his request to proceed pro se with appointed cocounsel; and (6) the district court erred when it allowed his counsel to withdraw after he filed a motion requesting her removal. Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Rincon's case was submitted to the district court for a bench trial on stipulated facts. The parties stipulated to the following facts leading up to charges being filed against Rincon:

"a. On March 20, 2012, the defendant appeared before Judge Joseph McCarville in Reno County District Court case number 12 DM 263 in which Aimee Fenton, the defendant's girlfriend, had applied for a protection from abuse order. During the hearing, Ms. Fenton advised the court that the defendant possessed several firearms. Judge McCarville issued a final protection from abuse order, and ordered the defendant to present all firearms in his possession to the Sheriff's Office on March 21, 2012. The defendant asked if he could sell the firearms, and that request was denied.

"b. After the hearing on the PFA, investigators from the Sheriff's Office interviewed Ms. Fenton. She advised investigators that the defendant carried two handguns with him at all times, and that he carried an assault rifle in the trunk of his car. Ms. Fenton advised Det. Skomal that the judge had issued a protection from abuse order, and that the defendant had been ordered by the court to turn the guns in by 10:00 a.m. on March 21, 2012.

"c. A criminal complaint/information was filed on March 21, 2012, at 8:04 a.m. in Reno County District Court case number 12 CR 260 charging Roberto Rincon with the crime of criminal use of a weapon arising out of his possession of an automatic weapon on March 10, 2012. An arrest warrant with a $20,000 bond was issued by the district court at that time.

2

"d.  Roberto Rincon did not turn in his weapons by 10:00 a.m. on March 21, 2012. At 1:38 p.m. on March 21, 2012, Judge Joseph McCarville issued a search warrant for the defendant's residence at 1612 West 4th Avenue, Apartment G, in Hutchinson, Reno County, Kansas, and three vehicles the defendant was known to drive, including a white 1996 Pontiac Grand Prix bearing Kansas registration plates 369 ETT. The warrant allowed officers to search for firearms, ammunition, and any other evidence of the crime of unlawful possession of a firearm. Officers investigating the case initiated surveillance on the defendant's residence. At about 4:00 p.m., detectives contacted Lawrence Rincon, the defendant's father, regarding the court's order requiring his son to surrender all his firearms. A few minutes later, officers observed Lawrence Rincon exit the residence twice, and place what appeared to be rifles in his vehicle. The defendant was with him the second time he came out of the house. Lawrence Rincon then drove to the Sheriff's Office, and delivered several rifles and shotguns. The handguns and assault rifle were not surrendered at that time.

"e.  Det. Blumanhourst observed Lawrence Rincon return to the house, and deliver what the detective believed was an evidence custody sheet to the defendant. Det. Blumanhourst also observed the defendant going back and forth from the residence to the white Grand Prix, and at one point saw him place a black duffle bag in the vehicle. At approximately 5:00 p.m., officers observed the defendant leave his residence, and travel eastbound on 4th Avenue. When it became apparent that the defendant was not heading toward the Sheriff's Office, the vehicle was stopped at 5th and Van Buren in Hutchinson. A search of the defendant at that time resulted in the seizure of a loaded Ruger .380 handgun with a round in the chamber from the defendant's jacket pocket.

"f.  It was raining, so the vehicle was transported to the Sheriff's Office to be searched. Officers discovered a Glock 10 mm handgun in the space between the seat and the console in the front seat of the car. The weapon was loaded, with a round in the chamber. The assault rifle was found in the trunk of the car, and was also loaded. Several hundred rounds of ammunition were located in the bag in the trunk. Officers located the registration for the vehicle identifying it as owned by the defendant. As the officers were searching the trunk, they found what appeared to them to be an active methamphetamine lab. A second search warrant was obtained.

"g.  Officers seized a clear glass pipe used for smoking methamphetamine from the glove compartment of the car. Officers also seized a cellular telephone from the

console, later found to be owned by the defendant. Also seized was a bullet proof Second Chance brand vest from the front passenger's floorboard of the car.

"h. Officers seized a National Guard computer, a desert camouflage backpack, a black duffle bag, a dark green camouflage bag, a red cloth bag with an American flag on it, a camouflage fanny pack, a green bag with handles, a green plastic bag and a green Army duffle bag from the car containing items involved in the manufacture of methamphetamine.

"i. The National Guard computer bag contained the following items: an aquarium pump with tubing to use to assist in the final gassing process in the manufacture of methamphetamine; an open bag of sea salt for use in the final gassing process in the manufacture of methamphetamine; a 14.1 oz Bernzomatic propane cannister [*sic*]; two cans of starting fluid; a 100-count package of coffee filters; a digital scale, test tubes; and test tubes with melted ends. Samples were taken of the tubing (1a1TP) and salt (1b1TP).

"j. The desert camouflage pack contained the following items: two bottles of Kaizen brand ephedrine HCL intended for use to manufacture methamphetamine; a four-pack of Energizer lithium batteries with one battery missing which were possessed with the intent to manufacture methamphetamine; and a paint brush. A sample was taken of the ephedrine (2a1TP).

"k. The green camouflage backpack contained the following items: a glass jar with used coffee filters and grunge; a can of starting fluid; and two 1 gallon plastic pitchers. A sample was taken from the jar with used coffee filters (3a1TP).

"l. The black duffle bag contained the following items: a 40 oz clear container with a clear liquid and coffee filter; a six cup Ball glass with pink grunge; a 40 oz pretzel container with grunge and a filter; a 32 oz glass jar with used coffee filters left over from the manufacture of methamphetamine; a ziplock [*sic*] baggie with sixteen empty blister packs of pseudoephedrine, the pills from which had been used in the manufacture of methamphetamine, rubber gloves; and a fish tank heater. Samples were taken from the 40 oz container (4a1TP) and the Ball glass (4b1TP).

"m. The red cloth bag contained two one-gallon plastic pitches intended for use in the manufacture of methamphetamine, and tools which were used to remove lithium metal from batteries.

4

"n.  The camouflage fanny pack contained rubber gloves identical to the gloves found in the black duffle bag; rubber tubing intended for use in the manufacture of methamphetamine; and a small sack of rice.

"o.  The green bag with a handle seized from the console of the car contained a gas mask intended for use during the manufacture of methamphetamine.

"p.  Officers also seized the following items from the car: a plastic container with funnels which were intended for use in the manufacture of methamphetamine; a two gallon plastic container with a clear liquid and pink grunge, a sample of which was taken (9aTP); a 14.1 oz Worthington propane bottle attached to a Lenox torch intended for use in the manufacture of methamphetamine; a dark green sack containing seven bags of pills which had been removed from their original packaging (item 11aTP) which were intended for use in the manufacture of methamphetamine; an army duffle bag containing a 30 gallon tank with rubber hose attached which was intended for the use in the manufacture of methamphetamine; a red 30 gallon air tank which was intended for the use in the manufacture of methamphetamine; a green cloth sack containing a silver tank with an altered fitting; a Dillon's sack containing a red, one quart bottle, a sample of which was taken (15aTP), and which was intended for the use in the manufacture of methamphetamine; and an eight pack of Energizer lithium batteries which was intended for the use in the manufacture of methamphetamine. Det. Perez tested the silver tank with the altered fitting and found it contained anhydrous ammonia.

"q.  A search was done of the defendant's residence, and the following items were taken: loose ammunition; a black stocking cap containing ammunition and a clear meth pipe (item SM2A); three empty magazines; one full magazine; a clear plastic bag with white residue (item SM4); a coffee filter in a bag with white residue (item SM5) which was the result of the manufacture of methamphetamine; and two cellular telephones."

On March 22, 2012, the State charged Rincon in case 12CR266 with one count of manufacture of methamphetamine or, in the alternative, one count of attempted manufacture of methamphetamine; one count of possession of ephedrine or pseudoephedrine with the intent to manufacture a controlled substance; one count of possession of lithium metal with the intent to manufacture a controlled substance; one count of possession of anhydrous ammonia with the intent to manufacture a controlled

substance; and one count of possession of drug paraphernalia with the intent to manufacture methamphetamine.

*Rincon goes through several attorneys*

The district court appointed the public defender to represent Rincon on March 23, 2012. On April 9, 2012, due to a conflict with the public defender's office, the district court appointed Mark Fletchall to represent Rincon. Fletchall filed a motion to withdraw as counsel on June 5, 2012, claiming that his continued representation would result in Fletchall violating the Kansas Rules of Professional Conduct. On June 19, 2012, the district court removed Fletchall and appointed Sean A. Hatfield to represent Rincon. For reasons not stated in the record, the district court removed Hatfield and appointed Terry Beall to represent Rincon on July 19, 2012. On August 8, 2012, the district court removed Beall due to a conflict and appointed Sam Kepfield to represent Rincon. Kepfield remained on the case until March 18, 2013, when the district court appointed Pam McLemore to represent Rincon. The district court removed McLemore and appointed Gregory G. Meredith to represent Rincon on September 18, 2013.

*Rincon files motions to suppress the evidence*

On November 29, 2012, Rincon filed a motion to suppress evidence. In the motion, Rincon argued that the search warrant affidavit failed to establish probable cause to search his vehicles and residence for weapons. Specifically, Rincon argued that much of the information included in the affidavit was stale and provided little, if any, probable cause for law enforcement to conduct a search. He also argued that the good-faith exception did not apply if the district court determined that police relied in good faith upon the search warrant because Judge McCarville had abandoned his neutral and detached role through the issuance of the search warrants.

6

The district court held a hearing on Rincon's motion to suppress on January 2, 2013. After hearing arguments of counsel, the district court ruled that it was bound by the information contained within the four corners of the application and affidavit for a search warrant. The district court determined that some of the information included in the search warrant affidavit was stale. Nevertheless, the district court found there was probable cause in the affidavit to support the search warrant for weapons and even if there was not probable cause, the officers had a good-faith belief that the search warrant was valid. Therefore, the district court denied Rincon's motion to suppress.

Rincon later filed a second motion to suppress evidence. In the second motion, Rincon argued that the affidavit for the search warrant contained material misstatements of fact without which probable cause would not exist to support the warrant. Rincon's second motion to suppress did not include a sworn affidavit supporting his claims. The district court held a hearing on Rincon's second motion to suppress on August 19, 2013. At the hearing, the State argued that Rincon's motion was procedurally barred because the motion was not supported by an affidavit. The State also argued that even if the statements Rincon objected to were found to be inaccurate, the affidavit supporting the search warrant was sufficient to establish probable cause. After hearing arguments of counsel, the district court denied Rincon's second motion to suppress.

*Bench trial on stipulated facts*

On August 22, 2013, the district court held a bench trial on stipulated facts. In addition to the stipulated facts previously set forth in this opinion, the parties stipulated as follows:

> "r. Photographs were taken in this case. Said Photographs are marked as Exhibit 1, attached to this stipulation, and incorporated herein by reference. The evidence custody sheet in this case is attached as Exhibit 2, and incorporated herein by reference.

7

"s. Testimony from the KBI chemist and DEU officers would show that there are several general chemicals that are used in the process of making methamphetamine, a controlled substance commonly manufactured in clandestine drug labs. The most common precursor drug for the manufacture of methamphetamine is ephedrine or pseudoephedrine. This precursor is often obtained by obtaining cold or allergy medication. The cold or allergy medication is then often crushed or ground and placed into water or alcohol to remove the ephedrine or pseudoephedrine from binder and other materials found in the pills. The alcohol for this step is often obtained in the form of "Heet" or other brand of gas-line anti freeze. The ephedrine or pseudoephedrine is then combined with lithium metal and anhydrous ammonia to produce methamphetamine. The lithium metal is often obtained by removing lithium strips from lithium batteries. Anhydrous ammonia is a farm fertilizer that is stored in pressurized tanks either at anhydrous facilities or in the fields of farmers. The person manufacturing the methamphetamine then goes through a series of other steps to obtain the finished product of methamphetamine hydrochloride, which is a powder form of methamphetamine. Other chemicals that can be used in the manufacturing process include ether, most often obtained in the form of starting fluid, Coleman or other brand camp stove fuel and sulphuric acid. The sulphuric acid is combined with salt, often in the form of rock salt, to create hydrogen chloride gas, which is pumped into manufactured meth in a petroleum product to produce methamphetamine hydrochloride. Various types of drug paraphernalia are often used to manufacture methamphetamine including, but not limited to jars, glass plates, coffee filters, rock salt, aluminum foil, plastic tubing, funnels, coffee grinders, spoons, insulated mugs or coolers, soda bottles and pliers or other tools. These processes involve and/or create hazardous chemicals or bi-products which are not safe to store in the Sheriff's Office evidence custody system.

"5. The items of evidence collected in this case were placed into the evidence system at the Hutchinson Police Department, and said evidence was handled in a manner which preserved its integrity for use at trial.

"6. Items of suspected drugs, evidence of the manufacture of methamphetamine, and drug paraphernalia were sent to the K.B.I. lab for testing. The evidence was tested by Harold Chris Riddle, a K.B.I. forensic chemist and expert in the testing of substances for the presence of controlled substances, and were found to be consistent with the manufacture of methamphetamine. (See Exhibit 3 attached hereto which is hereby incorporated herein by reference as being accurate.) Mr. Riddle would testify in this case

8

that item 9aTP (lab item 13) was consistent with a completed manufacturing process which requires only the 'gassing out' procedure to transform the methamphetamine in solution into methamphetamine hydrochloride. Mr. Riddle made several other determinations regarding the manufacture of methamphetamine in this case contained on page two of Exhibit 3 which the parties adopt as accurate for the purposes of this stipulation.

"7.  The evidence in this case is sufficient for this Court to find Roberto Rincon guilty as charged of manufacture of methamphetamine, attempted manufacture of methamphetamine, possession of ephedrine or pseudoephedrine with the intent to manufacture methamphetamine, possession of lithium metal with the intent to manufacture methamphetamine; possession of anhydrous ammonia with the intent to manufacture methamphetamine; and possession of drug paraphernalia with the intent to manufacture methamphetamine.

"8.  The evidence is sufficient for this Court to find that the defendant carried or possessed a firearm in furtherance of a drug felony."

Based on the stipulated facts, the district court found Rincon guilty of manufacture of methamphetamine, possession of ephedrine with the intent to manufacture a controlled substance, possession of lithium metal with the intent to manufacture a controlled substance, possession of anhydrous ammonia with the intent to manufacture a controlled substance, and possession of drug paraphernalia with the intent to manufacture methamphetamine. On August 27, 2013, the district court filed an order clarifying that it found Rincon possessed a firearm in furtherance of committing his drug crimes.

On September 25, 2013, Rincon filed a pro se motion for judgment of acquittal and/or new trial. The motion reasserted many of the issues that had been addressed in the two pretrial motions to suppress evidence. Rincon's counsel also filed a supplemental motion to suppress on November 21, 2013. The State filed a response on February 7, 2014, and argued that the posttrial motions were untimely. The district court held a hearing on Rincon's motions on March 17, 2014. After hearing arguments of counsel, the district court denied Rincon's motion for judgment of acquittal and/or new trial as being

9

untimely filed. The district court also denied the supplemental motion to suppress as untimely because Rincon already had been convicted.

The district court held a sentencing hearing on March 28, 2014. The district court imposed a controlling sentence of 156 months' imprisonment, which included an additional 6 months above the presumptive sentence based on the district court's supplemental finding at the bench trial that Rincon possessed a firearm in furtherance of committing his drug crimes. Rincon timely appealed the district court's judgment.

MOTIONS TO SUPPRESS EVIDENCE

Rincon first argues that the district court erred in denying his motions to suppress the evidence. Rincon argues that the search warrant affidavit failed to establish probable cause to search his vehicles and residence for weapons. He reasserts his argument that the affidavit for the search warrant contained material misstatements of fact without which probable cause would not exist to support the warrant. Finally, Rincon argues that the good-faith exception to the warrant requirement does not apply to save the illegal search.

The State responds that the search warrant affidavit established probable cause to search Rincon's vehicles which led to the discovery of an active methamphetamine lab. Even if the affidavit failed to establish probable cause, the State argues that the good-faith exception would apply to save the search. Thus, the State asserts that the district court did not err in denying Rincon's motions to suppress the evidence.

The search of Rincon's property was conducted with a warrant. To determine whether an affidavit submitted in support of a search warrant provides probable cause, the judge must consider the totality of the circumstances presented and make "a practical, common-sense decision whether a crime has been committed or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in

10

a particular place." *State v. Powell*, 299 Kan. 690, 695, 325 P.3d 1162 (2014). When a defendant asks the court to review the sufficiency of an affidavit in support of a search warrant, the court applies a deferential standard to determine whether

> "'the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Hensley*, 298 Kan. 422, 428, 313 P.3d 814 (2013).

Rincon filed two pretrial motions to suppress the evidence. In his first motion, Rincon argued that the search warrant affidavit failed to establish probable cause to search his vehicles and residence for weapons. As the district court indicated at the hearing, in reviewing Rincon's claim, the court is bound by the information contained within the four corners of the affidavit. See *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 949, *rev. denied* 284 Kan. 949 (2007). We will set forth the search warrant affidavit filed on March 21, 2012, in its entirety:

> "I, Shawn McHaley, Reno County Sheriff's Office, being of lawful age and duly sworn upon my oath, depose and state:
> "I am a Detective for the Reno County Sheriff's Office. I have been employed by the Reno County Sheriff's Office for eight years, and have been assigned to the detective division for three months. I have investigated over 100 criminal cases during my law enforcement career.
> "On March 12, 201 0, Roberto Rincon was arrested in the Reno County courthouse for taking two concealed handguns into the Division 2 courtroom. Rincon was subsequently convicted of criminal use of a weapon for this offense, and was ordered to serve a twelve month jail sentence.
> "On March 25, 2010, a Protection From Abuse order was entered in Sedgwick County District Court case number 10 DM 1824 prohibiting Roberto Rincon from

11

possessing any firearm. The order is currently valid, with an expiration date of April 14, 2012.

"On March 10, 2012, Roberto Rincon was found to be in possession of a fully automatic firearm in Reno County, Kansas. A complaint/information has been filed in Reno County District case number 12 CR 260 charging the defendant with criminal use of a firearm pursuant to K.S.A. 21-6301(a)(5).

"On March 20, 2012, Roberto Rincon appeared before Judge Joseph McCarville of the Reno County District Court on a final hearing for a protection from abuse petition which was filed against him by Aimee Fenton. The Case was assigned a case number of 12 DM 263. The Court issued a final Protection from Abuse Order in the case which is valid for the next year. During the hearing, Rincon admitted that he was in possession of several firearms. The victim told Judge McCarville that Rincon owns a .380 Ruger handgun, a 10 mm Glock handgun, and a Black Russian assault rifle. The judge ordered Rincon to turn over all his firearms to the Reno County Sheriff's Office no later than 10:00 on March 21, 2012. Rincon has not followed the court's order.

"Det. Skomal spoke to Aimee Fenton after the hearing, and Ms. Fenton told Det. Skomal that Rincon normally carries the handguns with him, and often has the assault rifle with him in the vehicle he is driving. The Sheriff's Office knows that Rincon has been seen recently driving two different vehicles, a gold 1996 Ford Taurus sedan bearing Kansas specialty license tag 9649, and a white 1996 Pontiac Grand Prix coupe bearing Kansas registration tag 369 ETT. Ms. Fenton also told Det. Skomal of an incident in which Rincon was stopped by a Sheriff's Deputy during which Rincon placed the Glock between his legs during the traffic stop. She said Rincon did not use the weapon against the officer because he recognized the officer from the jail, and the officer had treated Rincon well while he was in the jail. I know that Rincon resides at 1612 West 4th Avenue Apt. G in Hutchinson, Reno County, Kansas.

"I know from my training and experience that persons owning firearms often keep the majority of their weapons in their residence, while often carrying one or more weapons in their vehicle. I also know from my training and experience that extra ammunition, gun cleaning supplies, gun boxes and other materials are kept primarily within the owner's home.

"I know that it is a violation of 18 U.S.C.A. Sec. 922 (g)(8) for any person to possess a firearm once a protection from abuse order has been issued.

12

"I believe the evidence in this case establishes that Rincon is a direct threat to officers serving a warrant. Rincon was found in possession of two weapons in the Division 2 courtroom, and we have been informed he almost always carries at least one firearm, and possibly more, on his person on a constant basis. We also have the information regarding Rincon preparing himself for an armed conflict with a deputy on a traffic stop. I believe a no-knock warrant should be issued for the protection of officers in this matter.

"I believe that this affidavit provides evidence that Roberto Rincon is in possession of firearms in violation of 18 U.S.C.A. Sec. 922(g)(8). I therefore request that this Court issue a search warrant to search the premises of 1612 West 4th Avenue Apt. G in Hutchinson, Reno County, Kansas, and any outbuildings associated with the property; a gold 1996 Ford Taurus sedan bearing Kansas specialty license tag 9649; and a white 1996 Pontiac Grand Prix coupe bearing Kansas registration tag 369 ETT, to search for and seize any and all firearms, ammunition and any other evidence of the unlawful possession of a firearm. I also request that the Court issue a no-knock warrant for the entry into the residence at 1612 West 4th Avenue."

As Rincon argued in district court, the affidavit referred to a 2010 incident where Rincon carried two handguns into the Reno County Courthouse. The district court acknowledged that this information was stale, and the court did not rely on the information to establish probable cause to issue the search warrant. However, the district court found that the information about the 2010 Sedgwick County PFA order was relevant because the order was currently valid with an April 14, 2012, expiration date.

The rest of the affidavit referred to admissions Rincon made at the Reno County PFA hearing on March 20, 2012, that he was in possession of several firearms. The affidavit alleged that the judge ordered Rincon to turn over all his firearms to the Reno County Sheriff's Office no later than 10 a.m. on March 21, 2012, but Rincon had failed to follow the court's order. The affidavit further summarized Detective Skomal's interview with Aimee Fenton, who told Skomal that Rincon normally carries handguns with him and often has an assault rifle in the vehicle he is driving and weapons at his residence.

13

The affidavit established that Rincon drove a white 1996 Pontic Grand Prix coupe with Kansas license plate 369 ETT, and he resided at 1612 West 4th Avenue, Apartment G, in Hutchinson. Finally, the affidavit alleged that Rincon was in violation of 18 U.S.C. § 922(g)(8) because he was in possession of a firearm once a PFA order had been issued.

Law enforcement officers ultimately searched Rincon's vehicle for weapons and discovered evidence of an active methamphetamine lab in the vehicle. Upon discovering the drug evidence, law enforcement applied for and obtained a second warrant to continue searching Rincon's vehicle and residence for evidence of drug crimes. Rincon has not challenged the second search warrant in district court or on appeal.

We agree with the district court that the information in the search warrant affidavit established a fair probability that contraband or evidence of a crime would be found in a particular place. See *Powell*, 299 Kan. at 695. The affidavit established that Rincon was subject to a 2010 Sedgwick County PFA order that was still in effect and prohibited him from possessing any firearms; that Rincon admitted to the judge at his March 20, 2012, hearing in Reno County that he possessed several firearms; that the judge ordered Rincon to turn over all his firearms to the sheriff's office but he failed to follow the court's order; and that Rincon normally carries handguns with him and often has an assault rifle in the vehicle he is driving and weapons at his residence. Thus, we conclude the district court did not err in denying Rincon's first motion to suppress. We need not address the State's alternative argument that even if the affidavit failed to establish probable cause, the good-faith exception would apply to save the search.

Rincon's second motion to suppress argued that the affidavit for the search warrant contained material misstatements of facts without which probable cause would not exist to support the warrant. Specifically, Rincon argued that the affidavit erroneously stated two facts. First, Rincon alleged that the affidavit erroneously stated that he was ordered to surrender all of his weapons to the sheriff's office by 10 a.m. on March 21, 2012, when in

14

fact the judge never gave him a 10 a.m. deadline. Second, Rincon alleged that the affidavit referred "to the existence of a valid Protection From Abuse Order entered in Sedgwick County District Court case number 10 DM 1824 which prohibited Mr. Rincon from possessing any firearms. However, that PFA was invalid as Defendant was not personally served [with it] and he had [no] notice of its existence." Rincon's second motion to suppress did not include a sworn affidavit supporting his claims.

Rincon's argument constitutes an attack on the affidavit submitted in support of the search warrant. Such attacks are governed by *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Generally, an affidavit submitted in support of a search warrant is presumed valid and the facts in the affidavit may not be disputed by the party against whom the search warrant is directed. 438 U.S. at 171; *State v. Adams*, 294 Kan. 171, 178-79, 273 P.3d 718 (2012). However¸ *Franks* provides an exception to this general presumption of validity. The *Franks* exception requires an evidentiary hearing on the sufficiency of the affidavit if the defendant can show through a sworn allegation that the affidavit is unreliable because it contains false statements of material fact. 438 U.S. at 171-72; *Adams*, 294 Kan. at 179. Procedurally, if a defendant raises a *Franks* challenge and makes a prima facie showing that the affidavit is questionable, the court must excise the portions of the affidavit the defendant is challenging and consider whether the remaining portions of the affidavit provide probable cause to issue the search warrant. 438 U.S. at 171-72; *Adams*, 294 Kan. at 179.

Rincon's brief contains an extended argument that the 2010 Sedgwick County PFA order was invalid because Rincon was never personally served with the order. As a result, Rincon argues that the affidavit did not contain sufficient evidence that he was subject to a protective order as specified in 18 U.S.C. § 922(g)(8). But Rincon's argument fails because, as the State argues, Rincon's second motion to suppress was not supported by any sworn allegations. See *Franks*, 438 U.S. at 171-72; *Adams*, 294 Kan. at 179.

15

Here, the search warrant affidavit alleged that "[o]n March 25, 2010, a Protection From Abuse order was entered in Sedgwick County District Court case number 10 DM 1824 prohibiting Robert Rincon from possessing any firearm. The order is currently valid, with an expiration date of April 14, 2012." Generally, an affidavit submitted in support of a search warrant is presumed valid and the facts in the affidavit may not be disputed by the party against whom the search warrant is directed. *Franks*, 438 U.S. at 171; *Adams*, 294 Kan. at 179. Rincon is not permitted to argue that he was not personally served with the 2010 Sedgwick County PFA order without providing a sworn affidavit supporting this claim. See *Franks*, 438 U.S. at 171-72; *Adams*, 294 Kan. at 179.

The district court found that even if the statements Rincon objected to were found to be inaccurate, the affidavit supporting the search warrant was sufficient to establish probable cause. However, we need not engage in this analysis because Rincon's second motion to suppress was procedurally barred in the first place. Thus, we conclude that the district court did not err in denying Rincon's second motion to suppress the evidence.

MOTION FOR CONTINUANCE TO RETAIN COUNSEL

Next, Rincon argues that the district court erred when it denied his motion to continue the trial so that he could retain counsel. Rincon argues that as a result of the district court's ruling, he was denied his fundamental right to retain counsel of his choice.

At the end of the hearing on Rincon's second motion to suppress on August 19, 2013, Rincon personally asked the district court for a trial continuance so that a private attorney could make an appearance in the case. He told the court that his parents had retained Kevin Loeffler and the only reason he was waiting to make an appearance was because the State had informed Loeffler that it would be opposed to a continuance of the trial. Rincon stated that his current attorney McLemore had only visited with him four times in 5 months and he was not comfortable proceeding to trial with her as counsel.

16

The district court denied the motion for continuance because Rincon had almost 1 1/2 years to hire an attorney and he had already been through five attorneys.

K.S.A. 22-3401 provides that a district court may grant a continuance "for good cause shown," and its refusal to grant a continuance will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Lewis*, 299 Kan. 828, 846, 326 P.3d 387 (2014). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

A defendant's right to a fair opportunity to obtain counsel of the defendant's choice cannot be manipulated to impede the efficient administration of justice. *State v. Anthony*, 257 Kan. 1003, 1019, 898 P.2d 1109 (1995). "'When a criminal defendant's constitutional right to secure counsel of his choice conflicts with the trial judge's discretionary power to deny continuances, the reviewing court must balance several factors in determining whether the trial court's conduct was "fair and reasonable."'" 257 Kan. at 1019 (quoting *United States v. Kelm*, 827 F.2d 1319, 1322 [9th Cir. 1987]). These factors are: "(1) whether a continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the fault of the defendant; and (5) whether denial of a continuance would prejudice the defendant." *Anthony*, 257 Kan. at 1019.

Here, Rincon's requested continuance would have inconvenienced the State as the prosecutor asserted that his court schedule would not allow the case to be tried for several months. At the time the continuance was requested, the case had been pending for 17 months. The case already had been continued numerous times as Rincon was appointed five different attorneys due to his repeated requests for new counsel.

17

There was also some concern about whether Loeffler was committed to entering an appearance in the case. Both the prosecutor and McLemore expressed frustration over whether Loeffler was going to actually enter his appearance. Nothing prevented Loeffler from entering an appearance except his own hesitance to do so. In fact, Loeffler had informed the prosecutor and McLemore that he was not entering the case.

In denying the request for a continuance, the district court stated that it was not persuaded that Loeffler was deterred from appearing because the State opposed a continuance. The district court noted that it often granted continuances over the State's objection. The judge specifically stated that if Loeffler had entered an appearance and requested a trial continuance, "[T]hat's a very good argument for a continuance."

Rincon's case had been pending for almost 1 1/2 years and he had plenty of time to retain counsel of his choice. The case had been continued numerous times because of Rincon's dissatisfaction with his counsel, and another continuance would have inconvenienced the State. Rincon did not provide a legitimate reason for another delay, and he failed to establish how he was prejudiced by the denial of the continuance. For all these reasons, we conclude the district court did not abuse its discretion in denying Rincon's request for a continuance so that he could retain counsel.

DENIAL OF POSTTRIAL MOTIONS

Next, Rincon argues that the district court erred when it denied his motion for judgment of acquittal and/or new trial as untimely. Rincon's bench trial was held on August 22, 2013, and he was found guilty of the drug charges on that date. On September 25, 2013, Rincon filed a pro se motion for judgment of acquittal and/or new trial. The motion reasserted many of the issues that had been addressed in the two pretrial motions to suppress evidence. The district court denied Rincon's motion as being untimely filed.

18

K.S.A. 2014 Supp. 22-3501(1) requires a motion for new trial to be filed within 14 days of the verdict. On appeal, Rincon argues that he should have been allowed to bring his motion outside of the 14-day period because he was moved out of the county jail for 11 days during the 14-day time period and could not reach his attorney. The State argues that the 14-day time limit for filing a motion for new trial is mandatory.

The issue on appeal involves statutory interpretation. Interpretation of statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

K.S.A. 2014 Supp. 22-3501(1) allows a district court to grant a defendant a new trial if it is required in the interest of justice. If the motion for new trial is based on newly discovered evidence, the defendant may bring it within 2 years after final judgment. K.S.A. 2014 Supp. 22-3501(1). However, if the motion is based on any other grounds it "shall be made within 14 days after the verdict or finding of guilty or within such further time as the court may fix during the 14-day period." K.S.A. 2014 Supp. 22-3501(1). The statutory language is clear that unless the motion for a new trial is based on new evidence, it must come within 14 days of the verdict or finding of guilty.

Our Supreme Court confirmed this requirement in *State v. Holt*, 298 Kan. 469, 313 P.3d 826 (2013). In *Holt*, the court evaluated K.S.A. 2012 Supp. 22-3501(1) and determined that the language "shall be made within 14 days after the verdict" is mandatory and not directory. 298 Kan. at 479. The court also held that the statutory provision allowing for an extension of the 14-day period requires the extension to be made during the initial 14-day period following the verdict. 298 Kan. at 479. Here, Rincon admits he brought his motion for a new trial more than 14 days after the verdict was reached and no extension was provided during this 14-day period. Therefore, the district court did not err when it refused to consider Rincon's motion for a new trial because it was untimely.

Finally, we note that Rincon's pro se motion for judgment of acquittal and/or new trial reasserted many of the issues that had been addressed in the two pretrial motions to suppress evidence. In the stipulation of facts submitted at the bench trial, Rincon renewed his objection to the admission of the physical evidence, thereby preserving for appeal the denial of Rincon's motions to suppress the evidence. Rincon has not established how he has been prejudiced in any way by the denial of his motion for judgment of acquittal and/or new trial as being untimely filed. In fact, it is rare for a defendant to even file a posttrial motion in a case that has been submitted for a bench trial on stipulated facts.

FINDING ON POSSESSION OF FIREARM DURING COMMISSION OF THE CRIMES

Next, Rincon argues that the district court erroneously amended its verdict to include a finding that he possessed a firearm during the commission of his drug crimes, which resulted in an illegal sentence because the finding increased his sentence by 6 months. Rincon argues that the district court's failure to find that he possessed a firearm during the commission of the crimes at the bench trial hearing constituted an acquittal on that issue. Therefore, Rincon claims that the amended verdict violated the Double Jeopardy Clause of the United States Constitution and resulted in an illegal sentence.

The State argues that Rincon may not raise this issue for the first time on appeal. In the alternative, the State argues that the district court had jurisdiction to impose the sentence, the sentence conformed to the statutory provisions controlling it, and the sentence was not ambiguous about the time or manner in which it was to be served. Thus, the State argues that Rincon's sentence was not illegal.

Rincon did not raise this issue at the district court. However, this court may correct an illegal sentence at any time even if the issue was not raised before the district court. *State v. Perez*, 267 Kan. 543, 549, 987 P.2d 1055 (1999) (citing K.S.A. 22-3504[1]). Whether a sentence is illegal within the meaning of K.S.A. 22-3504(1) is a question of

20

law over which an appellate court has unlimited review. *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

We will briefly review the pertinent facts. At the bench trial on stipulated facts on August 22, 2013, the parties stipulated that Rincon possessed a firearm in furtherance of a drug felony. The district court found Rincon guilty based on the stipulated facts but did not make any specific finding at the hearing that Rincon possessed a firearm in the commission of the crimes. Then 5 days later, on August 27, 2013, the district court filed an order amending its findings to specifically find that Rincon possessed a firearm in furtherance of committing his drug crimes. Rincon made no objection to the amended finding. The district court sentenced Rincon on March 28, 2014, and added 6 months to Rincon's sentence based on the finding that he possessed a firearm in the commission of a drug felony. See K.S.A. 2014 Supp. 21-6805(g)(1)(A).

We agree with the State that Rincon is procedurally barred from raising his claim for the first time on appeal. Rincon is asserting for the first time on appeal that the district court's amended finding on the firearm possession violates the Double Jeopardy Clause of the United States Constitution. As a general rule, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Although there are exceptions to the general rule, Rincon fails to assert that any of the exceptions apply to his case.

Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. See *Godfrey*, 301 Kan. at 1044 (Rule 6.02[a][5] will henceforth be strictly enforced).

21

Rincon is claiming that the double jeopardy violation resulted in an illegal sentence which can be corrected at any time. See *Perez*, 267 Kan. at 549. But a constitutional challenge to a sentence does not result in an illegal sentence within the meaning of K.S.A. 22-3504(1). See *State v. Mitchell*, 284 Kan. 374, 377, 162 P.3d 18 (2007). This includes a challenge that a sentence violates the Double Jeopardy Clause. 284 Kan. at 376-77. Therefore, Rincon's argument that the amended verdict violated the Double Jeopardy Clause does not establish that his sentence was illegal. Without a valid claim that Rincon received an illegal sentence, he is procedurally barred from attacking the amended verdict for the first time on appeal.

In any event, we find no merit in Rincon's claim. Rincon cites no authority to specifically support his claim that the district court could not file an order amending its findings to specifically find that Rincon possessed a firearm in furtherance of committing his drug crimes, especially when the finding was based on stipulated evidence at a bench trial. A sentencing court violates the defendant's constitutional rights when it engages in judicial fact-finding to increase the maximum penalty for a crime. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (any fact that increases maximum penalty must be proved to jury beyond a reasonable doubt). But that is not what happened here. The finding that Rincon possessed a firearm during the commission of his drug crimes was made by the factfinder after the bench trial based on stipulated evidence, and Rincon provides no authority to support his claim that the judge was not allowed to make an amended finding.

DENIAL OF RINCON'S REQUEST TO PROCEED PRO SE WITH APPOINTED COCOUNSEL

In his pro se supplemental brief, Rincon argues that the district court erred when it denied his request to proceed pro se with appointed cocounsel. Rincon argues that the district court's ruling violated his right to self-representation under the Sixth Amendment to the United States Constitution. He also claims the district court failed to warn him

22

about the risks involved with self-representation. Issues regarding the rights to assistance of counsel and to self-representation are questions of law over which an appellate court exercises unlimited review. *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010).

Rincon filed a pro se motion to appoint new counsel on March 5, 2013. In his motion, Rincon requested that his current attorney Kepfield be relieved as his attorney and that Rincon be allowed to represent himself with appointed cocounsel. Rincon alleged that Kepfield was ineffective because he had failed to file motions and meet deadlines. Rincon also noted there was a potential conflict of interest because he had lodged a complaint with the disciplinary administrator against Kepfield.

The district court held a hearing on Rincon's motion on March 15, 2013. Kepfield recommended Rincon's motion be granted because Rincon refused to communicate with him. As to Rincon's request to represent himself with appointed cocounsel, the judge told Rincon that he could either proceed pro se or with appointed counsel, but not both. The judge told Rincon that if he wanted to proceed pro se, he would discuss with him the dangers of doing so. At that point, Rincon elected to proceed with an appointed attorney. On March 18, 2013, the district court appointed McLemore to replace Kepfield.

Rincon's argument on appeal is without merit. Our Supreme Court has held that while a defendant has a right either to self-representation or to be represented by counsel, a defendant does not have a right to hybrid representation. *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004). Therefore, the district court was not required to grant Rincon's request to proceed pro se with appointed cocounsel. Also, the district court did not fail to warn Rincon of the risks of self-representation. The judge told Rincon that if he wanted to proceed pro se, he would discuss with him the dangers of doing so. At that point, Rincon elected to proceed with an appointed attorney, negating the need for any further discussion of the dangers of self-representation.

23

## DID COURT ERR IN ALLOWING MCLEMORE TO WITHDRAW?

Finally, Rincon asserts in his pro se supplemental brief that the district court erred when it allowed McLemore to withdraw as counsel after Rincon filed a motion requesting her removal based on an alleged conflict of interest. Rincon argues that the district court failed to sufficiently inquire into the alleged conflict of interest he raised in his motion.

Rincon's argument is barred by the doctrine of invited error. A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Rincon requested the district court to remove McLemore and appoint new counsel. The district court did exactly that. Although normally the district court would have been required to inquire about the nature of the alleged conflict of interest, the issue became moot when the district court granted Rincon's request for new counsel. The district court did not err in granting Rincon the relief that he requested.

Affirmed.