No. 101,392

STATE OF KANSAS, *Appellee*, v. KENNETH D. ADAMS, *Appellant*.

(273 P.3d 718)

Opinion filed April 6, 2012.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant, and *Kenneth D. Adams*, appellant pro se, was on a supplemental brief.

*Natalie A. Chalmers*, assistant attorney general, argued the cause, and *Clay Britton*, assistant solicitor general, and *Julie A. Carroll*, assistant attorney general, of Kansas Bureau of Investigation, of Great Bend, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Defendant Kenneth D. Adams was convicted by a jury of six counts relating to a conspiracy to manufacture methamphetamine and possession of methamphetamine. In his direct appeal, Adams claimed error at various stages of the trial, but the Court of Appeals affirmed. See *State v. Adams*, 43 Kan. App. 2d 842, 232 P.3d 347 (2010). Now on petition for review, Adams argues: (1) The trial court erred in denying his motion to suppress evidence obtained after execution of a search warrant; (2) the jury was given an improper instruction with regard to testimony about prior drug use; (3) the court erred in using his criminal history to enhance his sentence; and (4) under the identical offense sentencing doctrine, the court erred in classifying his offense of possession of lithium metal with the intent to manufacture a controlled substance (K.S.A. 2007 Supp. 65-7006[a]) as a severity level 2 drug felony.

We reject Adams' arguments on the first three issues but grant relief on the last issue, vacating his sentence for possession of lithium metal with intent to manufacture a controlled substance and remanding for resentencing as a severity level 4 drug felony.

### FACTS AND PROCEDURAL BACKGROUND

Adams was arrested following an investigation that began with a routine traffic stop of Adams' housemate, Rachel Nelson. Nelson was stopped in Protection, Kansas, after Police Chief Darren Konrade saw her run a stop sign. Nelson appeared to be intoxicated, so Konrade conducted field sobriety tests. Nelson failed the tests and admitted to drinking alcohol and smoking methamphetamine. Konrade arrested Nelson and advised her of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966).

Konrade searched the pickup truck Nelson was driving and Nelson's purse. In the purse, he found a handwritten list of several items that he recognized were commonly used in the manufacture of methamphetamine: toluene, D batteries, lithium, starting fluid, and distilled water. Nelson admitted she had purchased some of these items with the purpose of manufacturing methamphetamine.

She claimed the manufacturing process was done in Oklahoma, although she indicated that she lived in Protection with "Kenny Adams." After further questioning, Nelson admitted some of the items had been purchased the previous day and were at her home in Protection. Nelson was taken to the police station where she completed a written statement. In that statement, she provided additional details regarding her involvement in methamphetamine manufacturing and implicated George Pitcherello as the person responsible for manufacturing the methamphetamine.

Less than 3 hours after the initial traffic stop, law enforcement officers executed a search warrant on Nelson's home in Protection. On arrival at the home, officers saw three individuals standing by a parked car and a woman and a small child sitting inside the car. Adams was one of the three individuals standing by the car.

While outside the home, officers could smell odors they associated with methamphetamine manufacturing, and, upon entering the home, the officers observed a haze throughout the kitchen area and traced the strong chemical odor to a bottle sitting in a skillet. Officers found a bedroom they suspected was being used for a methamphetamine lab and noticed several items commonly used in the manufacture of methamphetamine. The officers then called in agents for the Kansas Bureau of Investigation (KBI) to process a possible methamphetamine lab.

At that point, the officers detained several suspects, including Adams. Adams was given a recitation of his *Miranda* rights, after which Adams made several statements that indicated he was familiar with the pieces of paraphernalia being used in his house to manufacture methamphetamine and with the manufacturing process.

The KBI agents performed a complete search of the home and processed a large number of items used in the manufacture of methamphetamine. After these items were tested, methamphetamine was detected in at least eight different samples of liquids, powders, and other substances taken from the scene. Methamphetamine only was detected in at least four samples, while other samples contained a mix of methamphetamine and one or more of the following products: pseudoephedrine, toluene, and ethyl ether.

Other samples did not test positive for methamphetamine but contained various chemicals either used during methamphetamine manufacturing or produced naturally by the process, including lithium metal, ammonia, ethanol, methanol, ethyl ether, hydrochloric acid, toluene, sodium chloride, and sulfuric acid.

The State charged Adams with six counts: (1) manufacture of methamphetamine in violation of K.S.A. 2007 Supp. 65-4159(a), a severity level 1 drug felony, or alternatively, attempted manufacture of methamphetamine, see K.S.A. 21-3301; (2) conspiracy to manufacture methamphetamine in violation of K.S.A. 21-3302(a) and K.S.A. 2007 Supp. 65-4159(a), a severity level 1 drug felony; (3) possession of lithium metal with the intent to manufacture methamphetamine in violation of K.S.A. 2007 Supp. 65-7006(a), a severity level 2 drug felony; (4) possession of drug paraphernalia with intent to manufacture a controlled substance in violation of K.S.A. 2007 Supp. 65-4152(a)(3), a severity level 4 drug felony; (5) possession of methamphetamine in violation of K.S.A. 2007 Supp. 65-4160(a), a severity level 4 drug felony; and (6) possession of drug paraphernalia in violation of K.S.A. 2007 Supp. 65-4152(a)(2), a class A nonperson misdemeanor.

After his preliminary hearing but before trial, Adams filed a motion to suppress the evidence obtained when officers executed the search warrant. The trial court denied the motion.

At trial, Nelson testified for the State and indicated she and Adams had used methamphetamine the day of the traffic stop. Nelson also testified she and Adams had used various forms of paraphernalia to ingest the methamphetamine. Nelson then testified that Adams and Pitcherello had been partners in manufacturing methamphetamine. She also testified to some of the specific methamphetamine manufacturing processes they used.

In addition to Nelson's testimony, two other individuals who were present when the search warrant was executed, Tina Steinbarger and Charles Townsend, testified. Steinbarger testified that she, Townsend, and Pitcherello had driven together from Oklahoma to Adams' home in Kansas. When the group arrived at Adams' home, Pitcherello went inside. Townsend and Steinbarger went into the home about 30 minutes later. Steinbarger testified

that once inside, she, Townsend, and Pitcherello all injected methamphetamine. According to her, she did not possess any methamphetamine when she arrived in Protection.

Townsend testified that he had provided Pitcherello and Adams with pseudoephedrine pills in exchange for the two manufacturing methamphetamine for him. Townsend testified that while he and Steinbarger waited outside, he saw shadows in a room where Steinbarger had told him Pitcherello and Adams were cooking methamphetamine. Townsend entered the home, and the people inside, including Adams, were using methamphetamine. Townsend testified that after using the methamphetamine, Adams walked back toward the room where Townsend had seen the shadows. Adams entered the room, and an ammonia-like odor got much stronger. Pitcherello left the room holding a small, brown container with methamphetamine. Townsend identified that small, brown container as one of the containers police seized in the bust and explained that Pitcherello did not have that or any other methamphetamine when he arrived at Adams' house.

The jury returned verdicts of guilty to all charges. (The alternative charge of attempted manufacture of methamphetamine was dismissed as multiplicitous.) At sentencing, the court imposed a controlling sentence of 148 months' imprisonment for the manufacture of methamphetamine. Regarding Adams' other convictions, the court imposed concurrent terms of 148 months for conspiracy, 51 months for possession of lithium metal, 12 months for possession of drug paraphernalia, 12 months for possession of methamphetamine, and 12 months in the county jail for misdemeanor possession of drug paraphernalia. Additionally, the court ordered these sentences to be served consecutive to another sentence in Oklahoma.

On direct appeal, the Court of Appeals affirmed. *Adams*, 43 Kan. App. 2d 842. Adams filed a petition seeking this court's discretionary review of the same four issues he presented to the Court of Appeals. This court granted Adams' petition for review and has jurisdiction under K.S.A. 22-3602(e) (petition for review) and K.S.A. 20-3018(b) (same).

## Motion to Suppress

First, Adams contends the trial court erred in denying his motion to suppress the evidence obtained when officers executed the search warrant. In the motion submitted to the trial court, Adams attacked the affidavit submitted with the application for the warrant, arguing it contained material statements of deliberate falsehood or material statements made in reckless disregard for the truth.

The affidavit was prepared by Deputy Trent Allen. In the opening portion of the affidavit, Deputy Allen listed his qualifications, which included in-service training sessions regarding narcotics investigations, and experience gained from actual narcotics investigations. After a paragraph describing these qualifications, there was a section heading, which read: "Production of Controlled Substances." Following this heading, Allen stated: "Based on my training and experience, I am familiar with how controlled substances are manufactured, obtained, diluted, packaged, distributed, sold and used." Allen then described various processes for manufacturing methamphetamine, including processes that were unrelated to the method Nelson had described. The detailed descriptions identified the chemicals used as precursors, reagents, solvents, and catalysts and the steps of production for the various methods.

In his motion to suppress, Adams attacked this portion of the affidavit. Specifically, he alleged that Allen misrepresented his training, experience, and knowledge regarding the production of controlled substances. To support this assertion, Adams pointed to Deputy Allen's testimony at the preliminary hearing, which Adams argued revealed Allen's lack of in-depth knowledge about all of the various manufacturing methods detailed in his affidavit. As an example, Adams pointed to Allen's testimony regarding a conversation in which Allen explained to Adams that the "KBI's meth lab response team" had been called and that the processing of the scene would be left to the KBI because Allen "wasn't trained in meth labs and how they're set up. That's what the KBI was there for." As another example, Adams noted that on cross-examination, Allen stated he was not familiar with the red phosphorous method

of methamphetamine manufacturing even though he had stated in the affidavit that he was. Allen explained that he had used a template found on his computer for the affidavit. On redirect, Allen clarified that he had some training on methamphetamine labs but the training was not extensive.

Adams asserted this lack of personal knowledge meant the entire "Production of Controlled Substances" section of the affidavit, which was approximately two and a half pages of description regarding various manufacturing processes, had to be set aside. He further argued these descriptions were material and without them there was not sufficient information to establish probable cause to justify the search warrant.

In ruling on the motion, the trial court focused on another portion of the affidavit, which was labeled: "Probable Cause." In this section, Allen wrote, in part:

"Nelson failed standard field sobriety testing and was questioned about drug use[.] Nelson stated that she had purchased several methamphetamine precursors in Woodward[,] Oklahoma yesterday January 28, 2008. She stated that the precursors that she had purchased were located at 107 W. Main in Protection, Kansas. Also Mrs. Nelson provided a voluntary written statement about these activities. Mrs. Nelson also stated that George Pitcherello was at her residence at 107 W[.] Main in Protection and that he was the person responsible for the manufacture of the methamphetamine."

The trial court noted this portion of the affidavit summarized information gained from Nelson and that Chief Konrade's testimony at the preliminary hearing confirmed the affidavit accurately reported Nelson's statements. This information, according to the trial court, was sufficient to support probable cause.

Also, the court found the affidavit contained no material misrepresentations or statements made in reckless disregard for the truth. Consequently, the court denied Adams' motion to quash the warrant and suppress the evidence.

*Franks v. Delaware Procedure*

The trial court's analysis applied the principles outlined by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In *Franks*, the Supreme Court explained that an affidavit in support of a search warrant is

presumed valid, and in most cases, the facts contained therein may not be disputed by the party against whom the warrant is directed. See *Franks*, 438 U.S. at 171; *State v. Jacques*, 225 Kan. 38, 43, 587 P.2d 861 (1978). The Court then outlined a limited exception.

Under the *Franks* exception, an evidentiary hearing is required if a defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable in that it: (1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact. *State v. Francis*, 282 Kan. 120, 129, 145 P.3d 48 (2006); *State v. Schoonover*, 281 Kan. 453, 513, 133 P.3d 48 (2006). In attacking the affidavit, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false[,] and a statement of supporting reasons should accompany the motion to suppress." *Jacques*, 225 Kan. at 44 (citing *Franks*, 438 U.S. at 171).

In other words, the *Franks* Court explained, if a defendant makes a prima facie showing that the affidavit is questionable, the trial court should set aside or excise the challenged portions of the affidavit and consider whether the remaining portions of the affidavit provide sufficient evidence of probable cause. If probable cause can be found without the excised statements, no evidentiary hearing is required. On the other hand, if there is not sufficient content in the remaining portion of the affidavit to support a finding of probable cause, the defendant is entitled to an evidentiary hearing to establish the affiant deliberately omitted a material fact, deliberately made a false statement, or made a statement with reckless disregard for the truth. *Franks*, 438 U.S. at 171-72.

*Standard of Review*

According to Adams, when an appellate court reviews these *Franks* determinations, the appellate court applies the same standard of review as would be applied to any other ruling on a motion to suppress. Generally, an appellate court reviews the trial court's decision on a motion to suppress using a bifurcated standard: With-

out reweighing the evidence, the trial court's findings are reviewed to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Johnson*, 293 Kan. 1, 4, 259 P.3d 719 (2011). If the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *Johnson*, 293 Kan. at 4.

It is not clear that this standard applies in this case, however, because the trial court did not conduct an evidentiary hearing or make the factual findings that would be necessary if the trial court completed the last step of a *Franks* proceeding. Instead, the trial court in this case determined the portions of the affidavit that were not challenged established probable cause. As a result, there was no need for a *Franks*-style evidentiary hearing.

Without evidentiary findings to review, the Court of Appeals correctly determined the standard of review in this case is the same as any case in which we review a trial court's determination regarding whether undisputed facts establish probable cause for a search warrant. See *Adams*, 43 Kan. App. 2d at 850. We have explained that standard by stating:

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." *State v. Hicks*, 282 Kan. 599, Syl. ¶ 2, 147 P.3d 1076 (2006).

See *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

Hence, our standard of review is whether the trial court, using only the section of the affidavit labeled "Probable Cause," had a substantial basis to conclude there was a high probability that ev-

idence of methamphetamine use or methamphetamine manufacturing would be found in the home Nelson shared with Adams.

*Analysis*

The "Probable Cause" section of the affidavit included statements that Nelson appeared to be under the influence "of some type of drug," had failed standard field sobriety testing, and had indicated there was a possibility others at her house were under the influence of "dangerous drugs." In addition, the affidavit recounted Nelson's statements that she had purchased materials for the purpose of manufacturing methamphetamine, these materials were at her home, and "Pitcherello was at her residence . . . and that he was the person responsible for the manufacture of the methamphetamine." Without further inspection, these admissions created probable cause that there was evidence of the crime of manufacturing methamphetamine located in Nelson's residence.

Adams argues further inspection is warranted, however, because the affidavit contained the mere beliefs of the law enforcement officer without any corroborating evidence and the statements made by Nelson were unreliable because Nelson was not a disinterested citizen. To support these arguments, Adams relies on *State v. Landis*, 37 Kan. App. 2d 409, 156 P.3d 675, *rev. denied* 284 Kan. 969 (2007).

In *Landis*, a person arrested for having marijuana in her car became an informant and told law enforcement officers she had just purchased the marijuana from the defendant. Based on this information, officers obtained a search warrant for the defendant's residence. The defendant argued these statements were insufficient to establish probable cause because there was no information establishing the informant's veracity. The trial court rejected the argument, but on appeal the *Landis* court ruled the search warrant was issued without probable cause. The *Landis* court reasoned that in absence of any other information concerning the informant's reliability, police corroboration of only the location of the defendant's residence was insufficient to establish the informant's credibility or reliability. *Landis*, 37 Kan. App. 2d at 419-20.

Similarly, Adams points out that in the present case there was little evidence presented concerning Nelson's veracity and reliability and she clearly had motivation to place blame on others. Yet this case is distinguishable from *Landis* in that the search warrant was for Nelson's residence. Nelson was not merely pointing a finger in the direction of a tenuous third party; she was leading the officers to evidence that had the potential of fortifying or adding to charges the State could bring against her. This circumstance suggests veracity and reliability. Under these circumstances, additional information regarding Nelson's veracity and reliability was not necessary. See *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999) ("[T]he most favored of the tips are those which are in fact not really anonymous at all. These tips occur when the person giving the tip gives the police his or her name and address or identifies himself or herself in such a way that he or she can be held accountable for the tip.").

Consequently, we affirm the conclusion of the Court of Appeals: Given only the information provided by Nelson, the magistrate clearly had a "substantial basis to determine there was probable cause that methamphetamine was being manufactured in Nelson's residence." *Adams*, 43 Kan. App. 2d at 851. The trial court did not err in denying Adams' motion to suppress.

## Jury Instruction Regarding Prior Drug Use

Next, Adams argues that the trial court gave an improper jury instruction regarding testimony about prior drug use. This contention has no merit.

The instruction with which Adams takes issue is the third part of Instruction 13, which was patterned on PIK Crim. 3d 67.13-D. The relevant portions of the instruction provided the following:

"When a Defendant is in nonexclusive possession of the premises upon which a controlled substance is found, it cannot be inferred that the Defendant knowingly possessed the controlled substance unless there are other circumstances linking the Defendant to the controlled substance. Factors you may consider in determining whether the Defendant knowingly possessed the controlled substance include:

1. Defendant's use of controlled substances . . . ."

Because Adams did not object to this jury instruction, the standard of review is whether the instruction is clearly erroneous. See K.S.A. 22-3414(3). "Jury instructions are clearly erroneous only if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred." *State v. Tully*, 293 Kan. 176, 196, 262 P.3d 314 (2011).

The first question under this standard is whether the trial court erred by giving the instruction. See *Tully*, 293 Kan. at 196. In asserting there was error, Adams cites *State v. Boggs*, 287 Kan. 298, 317-18, 197 P.3d 441 (2008).

In *Boggs*, the defendant was arrested after a marijuana pipe was found under the passenger seat of the car in which he was riding. Boggs argued the pipe was not his and he was not aware it was in the car. In an attempt to link Boggs to the pipe, the State introduced evidence that Boggs had used drugs a month before his arrest. The *Boggs* court considered K.S.A. 60-455 to determine if the evidence of prior drug use was admissible. The version of the statute in effect at the time provided:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 60-455.

Applying 60-455, the *Boggs* court concluded that because the only issue was whether the driver or the passenger possessed the pipe, intent, knowledge, or absence of mistake were not disputed issues and, therefore, the introduction of Boggs' prior convictions did not fall within the exceptions of K.S.A. 60-455. *Boggs*, 287 Kan. at 308-09. The *Boggs* court explained that "[i]f a person asserts that he or she does not know that there are drugs in a residence . . ., prior use of drugs neither proves nor disproves the validity of that assertion." *Boggs*, 287 Kan. at 317. Specifically, the *Boggs* court held:

"While a defendant's use of a controlled substance may be admitted—subject to the requirements of K.S.A. 60-455—when such evidence is relevant to prove a

disputed material fact, the defendant's use of a controlled substance is not a factor that is *automatically* admissible as an exception to the specific mandates of K.S.A. 60-455. To the extent that PIK Crim. 3d 67.13-D suggests otherwise, the instruction is disapproved." (Emphasis added.) *Boggs*, 287 Kan. at 318.

This limitation on the use of the prior crimes evidence arose in the context of showing that Boggs had used drugs *a month prior* to his arrest. Similarly, in the recent decision of *State v. Preston*, 294 Kan. 27, 272 P.3d 1275 (2012), where we applied *Boggs*, we held evidence of a *prior drug conviction* was inadmissible to prove constructive possession.

In contrast, the evidence of Adams' drug use was use *at the time he was committing the crimes* for which he was charged. Both the version of K.S.A. 60-455 at issue in *Boggs* and the current version found at K.S.A. 2010 Supp. 60-455, apply to evidence "the person committed another crime or civil wrong on *another* specified occasion." (Emphasis added.) Hence, by its plain language, K.S.A. 60-455 does not apply to a circumstance involving the *same* occurrence. Further, admission of evidence of drug use is not contrary to the purpose of K.S.A. 60-455—the evidence is not admitted as propensity evidence but as circumstantial evidence showing a defendant had possession and control over the drugs. Consequently, many courts allow the admission of evidence establishing that a defendant had just used drugs or was under the influence of drugs at the time of an arrest because that evidence links the defendant with any drugs that are found in an area. See Annot., 56 A.L.R.3d 948, § 8[a], pp. 962-65, and p. 103 (2011 Supp.).

We conclude it is not error to use PIK Crim. 3d 67.13-D to inform a jury that a defendant's use of drugs is a factor the jury may consider in determining whether the defendant knowingly possessed a controlled substance when the evidence at trial is limited to the defendant's use of controlled substances on the same occasion as the one when the drugs were allegedly possessed by the defendant. In light of that conclusion, we need not consider whether the jury would have reached a different verdict had the instruction not been given.

### *APPRENDI/IVORY* ISSUE

Adams also argues the trial court violated his constitutional rights

under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it considered his prior convictions in determining his sentence without requiring those convictions to be included in the criminal complaint or proved to a jury beyond a reasonable doubt.

Adams acknowledges that this court has consistently rejected this argument. See, *e.g.*, *State v. Bennington*, 293 Kan. 503, Syl. ¶ 9, 264 P.3d 440 (2011); *State v. Riojas*, 288 Kan. 379, 388, 204 P.3d 578 (2009); *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). This court continues to hold that the use of prior convictions for sentencing enhancement is constitutional; thus, the Court of Appeals correctly found no merit to Adams' contention. See *Adams*, 43 Kan. App. 2d at 856.

## IDENTICAL OFFENSE SENTENCING DOCTRINE

Finally, we consider Adams' argument he should have been sentenced to the lesser penalty under K.S.A. 2007 Supp. 65-4152(a)(3) (possession of drug paraphernalia with intent to manufacture a controlled substance), a drug severity level 4 penalty, and not to a drug severity level 2 penalty under K.S.A. 2007 Supp. 65-7006(a) (possession of lithium metal with intent to manufacture a controlled substance). Even though Adams received a presumptive sentence, he may challenge the trial court's ranking of the severity level of a crime of conviction. See K.S.A. 21-4721(e)(3); *State v. Thomas*, 283 Kan. 796, 805-06, 156 P.3d 1261 (2007). In making this challenge, Adams relies on the identical offense sentencing doctrine. See *State v. Campbell*, 279 Kan. 1, Syl. ¶ 5, 106 P.3d 1129 (2005).

We have considered this same issue in *State v. Snellings*, 294 Kan. 149, 273 P.3d 739 (2012). In *Snellings*, the defendant was convicted of possessing ephedrine or pseudoephedrine with intent to manufacture methamphetamine in violation of K.S.A. 2007 Supp. 65-7006(a). Adams was convicted under the same statute— K.S.A. 2007 Supp. 65-7006(a)—but was alleged to have possessed *lithium metal* with the intent to manufacture methamphetamine, rather than *ephedrine or pseudoephedrine*.

The statute under which Adams was charged, K.S.A. 2007 Supp. 65-7006(a) states it is unlawful for any person to "possess ephedrine, pseudoephedrine, red phosphorus, lithium metal, sodium metal, iodine, anhydrous ammonia, pressurized ammonia or phenylpropanolamine, or their salts, isomers or salts of isomers with intent to use the product to manufacture a controlled substance." A violation of this law is a severity level 2 drug felony. K.S.A. 2007 Supp. 65-7006(f). Methamphetamine is classified as a controlled substance under K.S.A. 2007 Supp. 65-4101(e) and K.S.A. 65-4107(d)(3).

The statute representing the lesser penalty, K.S.A. 2007 Supp. 65-4152(a)(3), which Adams contends overlaps with K.S.A. 2007 Supp. 65-7006(a), states it is unlawful for any person to "use or possess with intent to use: . . . any drug paraphernalia to . . . manufacture . . . a controlled substance." A violation of this law is a severity level 4 drug felony. K.S.A. 2007 Supp. 65-4152(c). Drug paraphernalia is defined as "equipment and materials of any kind" that are intended for use in manufacturing a controlled substance. K.S.A. 2007 Supp. 65-4150(c). Adams argues that lithium metal qualifies as "materials of any kind" used to manufacture methamphetamine.

In *Snellings*, after discussion of the identical offense sentencing doctrine, we concluded that the elements of K.S.A. 2007 Supp. 65-7006(a) overlap with K.S.A. 2007 Supp. 65-4152(a)(3) and, to the extent of the overlap, are identical. *Snellings*, 294 Kan. at 158. Citing a dictionary definition of "material" is defined in part as "the substance or substances out of which a thing is or can be made; [c]omposed of or relating to . . . substances," Webster's II New Collegiate Dictionary 675 (1995), we concluded ephedrine and pseudoephedrine are "materials" because they are chemicals of which methamphetamine is made. *Snellings*, 294 Kan. at 158. Hence, both statutes prohibit possession of ephedrine or pseudoephedrine with the intent to manufacture methamphetamine. Given that identity of elements, we held the defendant had to be sentenced under the lower severity level. Consequently, we vacated the defendant's sentence for a severity level 2 drug felony and

remanded the case with directions to resentence the defendant to a severity level 4 drug felony. *Snellings*, 294 Kan. at 158-59.

Making a nearly identical argument to that made by Snellings, Adams argues that lithium metal, rather than ephedrine or pseudoephedrine, also falls into the definition of drug paraphernalia as "materials of any kind" because it is a material used to manufacture a controlled substance, such as methamphetamine.

We see no basis to distinguish the holding in *Snellings* from this case. Consequently, we hold that the elements of the offense of possession of lithium metal with intent to manufacture methamphetamine under K.S.A. 2007 Supp. 65-7006(a) are identical to the elements of the offense of possession of drug paraphernalia with intent to manufacture methamphetamine under K.S.A. 2007 Supp. 65-4152(a)(3). This means the trial court erred in sentencing Adams under K.S.A. 2007 Supp. 65-7006(a) as a severity level 2 drug felony. We vacate his sentence for possession of lithium metal with intent to manufacture a controlled substance and remand this case for resentencing on that count as a severity level 4 drug felony under K.S.A. 2007 Supp. 65-4152(c).

The Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed in part and vacated in part, and the case is remanded to the district court. Adams' convictions are affirmed, and his sentences are affirmed in part and vacated in part. Specifically, Adams' sentence for violation of K.S.A. 2007 Supp. 65-7006(a) is vacated and remanded with directions to resentence Adams to a severity level 4 drug felony as provided for a violation of K.S.A. 2007 Supp. 65-4152(a)(3).

MORITZ, J., not participating.
PAULA B. MARTIN, District Judge, assigned.