NOT DESIGNATED FOR PUBLICATION

No. 121,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LARRY ODELL DANIELS SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed July 2, 2020. Affirmed.

*Judd L. Herbster*, of Herbster Law Firm, LLC, of Prairie Village, for appellant.

*Sherri L. Becker*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

PER CURIAM: Larry Daniels challenges his convictions for possession of drugs and possession of drug paraphernalia, arguing the court erred in denying his motion to suppress evidence police found when they searched his residence. He also claims the court should have granted his request for a mistrial after a potential juror made statements during jury selection about Daniels' previous drug use. After carefully reviewing the parties' arguments and the record before us, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2017, Detective Kelly Johansen of the Atchison County Sheriff's Office applied for a warrant to search Daniels' house because he believed Daniels was selling methamphetamine. Detective Johansen cited three grounds in his affidavit to support his request.

*First*, Detective Johansen indicated that a confidential informant had performed a controlled methamphetamine buy from Daniels two days earlier. Before the purchase, Johansen searched the informant for drugs, gave him $60, dropped him off near Daniels' residence, parked on the street, and watched the informant enter the house. Since the informant was wearing a wire, Johansen listened to the discussion between the informant and a person Johansen believed to be Daniels. At one point, Johansen heard this person offer to sell the informant two $20 packages, which the informant purchased. After the sale, the informant left the residence; Johansen picked up the informant and returned to the sheriff's office.

The informant gave Detective Johansen the two packages and the unspent $20. During the debriefing, the informant described entering the house, meeting Daniels in his bedroom, purchasing $40 of methamphetamine from him, and leaving. Although he never actually saw what was in the package, the informant was confident that Daniels had sold him methamphetamine. The informant arranged to purchase additional methamphetamine on the evening of August 6.

Detective Johansen trusted the informant based on their past interactions. The informant had performed several other controlled buys, accurately informed Johansen of other drug dealers and drug activity, and always handed over the drugs and money used during controlled buys. Given this history, Johansen believed Daniels would have the methamphetamine that evening.

*Second*, Detective Johansen spoke to Daniels' neighbor. The neighbor informed Johansen that she believed drugs were being sold from Daniels' residence. The neighbor described how visitors frequently came to the house (whether by car, bike, or on foot, and particularly on weekends) but would leave after five minutes. Visitors used to receive drugs while sitting in their cars, but they had recently begun to go inside the house.

*Third*, Detective Johansen had monitored the residence on August 3 and 4. During that time, he noticed several people entering and leaving the house, many people sitting in their cars outside the house, and others yelling and arguing in the front yard. In the detective's experience, high traffic levels were indicative of drug distribution.

A district judge issued a search warrant for methamphetamine and drug paraphernalia on August 6—the same day Detective Johansen requested it. Later that evening, the sheriff's office executed the warrant. Although deputies did not find appreciable amounts of drugs, they found four pipes and five sets of scales in Daniels' bedroom. Drug tests revealed methamphetamine, cocaine, and marijuana residue in three of the pipes. The State charged Daniels with possession of methamphetamine, possession of cocaine, possession of marijuana, and possession of drug paraphernalia.

Before trial, Daniels filed a motion to suppress the evidence obtained when the deputies executed the warrant. Daniels argued the confidential informant was unreliable because, contrary to the affidavit, he had never sold methamphetamine to the informant in any controlled buy. The district court held a hearing on the suppression motion the morning of trial. Detective Johansen and Daniels testified—the detective described the circumstances leading up to the issuance of the warrant and the subsequent search, and Daniels denied that he had participated in a controlled buy.

Having heard this testimony, the district court denied Daniels' motion. The court noted that although there was a factual dispute over whether Daniels had been involved in the sale to the confidential informant, the detective reasonably relied on information obtained in good faith. And the court noted other details—the neighbor's and Detective Johansen's own observations—supported the detective's belief that Daniels was selling drugs from his residence.

The case proceeded to trial. During jury selection, the State asked the pool of potential jurors whether anyone knew Daniels. One potential juror responded that he did, as he had used drugs with Daniels about 13 years ago. The potential juror indicated he could not be a fair and impartial juror, and the district court removed him for cause from the jury pool.

Daniels asked the court to dismiss the remainder of the prospective jurors— essentially, to declare a mistrial—arguing the jury pool had been tainted by the potential juror's statements about Daniels' previous drug use. The court denied this motion. But it immediately instructed the prospective jurors that the defendant was presumed innocent, and the jury was charged with deciding the case based on the evidence to be presented:

> "Ladies and gentlemen, at this time the Court is going to again instruct you to ignore any comments that are made by any prospective juror as to any past relationship in this matter.
> "Again, your job and your focus will be to decide this case based on the evidence that is presented, not upon any idle remarks that are made by anyone else.
> "Again, as I have instructed you before, the defendant is presumed innocent as he sits here because there's no evidence that is presented.
> "So idle comments or comments that are made that might come up, please ignore those until you have heard the evidence that is presented in this case."

4

The jury convicted Daniels on all four charges. The district court imposed concurrent sentences for all four offenses, for a controlling prison sentence of 30 months, followed by 12 months' postrelease supervision.

Discussion

Daniels challenges his convictions in two respects on appeal. He argues the district court erred in denying his motion to suppress, as the confidential informant's statements in the affidavit supporting the search warrant were unreliable. And he asserts that the court abused its discretion when it denied his motion for a mistrial during jury selection. As the following discussion indicates, these arguments do not apprise us of error.

1. *The district court did not err in denying Daniels' motion to suppress.*

The Fourth Amendment to the United States Constitution, which contains language nearly identical to Section 15 of the Kansas Constitution Bill of Rights, states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and persons or things to be seized." Daniels argues the search warrant here lacked probable cause because it lacked information relating to the confidential informant's criminal history as a registered drug offender and incentive to act as an informant. Daniels asserts this information was critical to any assessment of the informant's reliability and, without it, the warrant did not provide probable cause to search Daniels' home.

As a preliminary matter, Daniels' challenge to the search warrant faces a number of procedural hurdles. First, although the district court addressed Daniels' suppression motion the morning of trial—but before jury selection and the presentation of any evidence—Daniels did not renew his objection to the deficiency of the search warrant when the State presented the evidence obtained from the search to the jury. And the argument he now raises—the informant's criminal history and incentive to act as an

informant—is different from the argument he presented to the district court in his motion to suppress.

Kansas law requires a party to "'make a specific and timely objection at trial in order to preserve evidentiary issues for appeal.'" *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018) (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]); see K.S.A. 60-404. The purpose of the contemporaneous-objection rule is to allow the district court to act as an evidentiary gatekeeper at trial—to rule on the admissibility of evidence based on specific arguments raised during the course of the trial, with the context of other evidence and testimony presented. See *State v. Garcia-Garcia*, 309 Kan. 801, 810, 441 P.3d 52 (2019). For this reason, the rule applies even when a court has previously ruled on the defendant's objection in a suppression hearing; the evidence presented at such a hearing may differ from the evidence at trial. *State v. Sean*, 306 Kan. 963, 971, 399 P.3d 168 (2017).

As a corollary to this rule, a party cannot object on one ground at a suppression hearing, present a different argument at trial, and argue a third ground on appeal. *Garcia-Garcia*, 309 Kan. at 810. Not only does such a practice fly in the face of K.S.A. 60-404's requirement of a specific, contemporaneous objection, but it also prevents meaningful appellate review. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). The aim of both principles is to allow the district court the opportunity to consider and rule on the issue raised.

Daniels did not renew his arguments regarding the deficiencies in the search warrant at trial. Though he objected to some of the evidence obtained in the search on other grounds (claiming the scales were not evidence of possession), he never argued the evidence should be excluded based on the warrant. And the challenge he now brings is different from the argument he made at the suppression hearing. Daniels originally alleged the affidavit accompanying the warrant contained false information (claiming he

6

did not sell drugs, so he never participated in a controlled drug buy). But on appeal, he argues the warrant omitted material information concerning the confidential informant's criminal history as a registered drug offender and incentive to cooperate. This second point is particularly problematic from the standpoint of our review because the argument Daniels now raises—the alleged omission of material information in the affidavit accompanying the search warrant—requires factual findings by the district court.

"Generally, a defendant may not dispute allegations in the affidavit upon which a search warrant was issued against him." *State v. Jensen*, 259 Kan. 781, 787, 915 P.2d 109 (1996). But the United States Supreme Court created an exception in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), in instances when the affidavit contains false or misleading information. Under *Franks*, a defendant who challenges the reliability of a search warrant's accompanying affidavit may be entitled to an evidentiary hearing if he or she submits a sworn statement alleging the affidavit "(1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact." *State v. Adams*, 294 Kan. 171, 179, 273 P.3d 718 (2012).

"In other words, the *Franks* Court explained, if a defendant makes a prima facie showing that the affidavit is questionable, the trial court should set aside or excise the challenged portions of the affidavit and consider whether the remaining portions of the affidavit provide sufficient evidence of probable cause. If probable cause can be found without the excised statements, no evidentiary hearing is required. On the other hand, if there is not sufficient content in the remaining portion of the affidavit to support a finding of probable cause, the defendant is entitled to an evidentiary hearing to establish the affiant deliberately omitted a material fact, deliberately made a false statement, or made a statement with reckless disregard for the truth." 294 Kan. at 179.

Daniels originally argued the affidavit contained a "deliberate falsehood" under the first *Franks* exception. The district court heard testimony on that claim at the suppression hearing and found Detective Johansen had acted in good faith based on the evidence and reasonably believed, based on that evidence, that Daniels was selling drugs out of his home. The court also found that, even without the informant's statements, the information provided by Daniels' neighbor and Detective Johansen himself independently supported the issuance of the warrant.

Daniels now argues that a different *Franks* exception, the "deliberate omission of a material fact," applies. To prevail, he must show Detective Johansen deliberately omitted the informant's criminal history and incentive to cooperate from the affidavit, and that information was material to issuing the search warrant. See *State v. Landis*, 37 Kan. App. 2d 409, 415, 156 P.3d 675, *rev. denied* 284 Kan. 949 (2007). This is a different claim and requires different findings by the court—findings the district court was never given the opportunity to make. For these reasons, we conclude Daniels' argument regarding the confidential informant's criminal history is not properly before us.

Finally, we note that the district court's statements at the suppression hearing regarding the argument Daniels raised then—that the informant was unreliable because Daniels had not been selling drugs—appear to undermine the argument he now makes on appeal. The district court found that Detective Johansen's statements in his affidavit were made in good faith (that is, not deliberately false), even though Daniels' defense attorney pointed out during cross-examination that the informant had a criminal history, which is why that person was working with law enforcement. And the court's findings that the information in the affidavit regarding the personal observations of Daniels' neighbor and Detective Johansen independently supported a finding of probable cause is fatal to his present argument on appeal. See *Adams*, 294 Kan. at 179. Daniels has not apprised us of error in the district court's decision on his motion to suppress.

2. *The district court did not abuse its discretion by denying Daniels' motion for a mistrial.*

Daniels also argues the district court erred when it denied his request for a mistrial—that is, for the dismissal of the remaining jury pool—after the prospective juror indicated he had used drugs with Daniels 13 years earlier. We conclude the court did not abuse its discretion in proceeding as it did.

Under K.S.A. 22-3423(1)(c), a district court may declare a mistrial when "[p]rejudicial conduct . . . makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." Our Kansas Supreme Court has explained that district courts engage in a two-step process when deciding whether to declare a mistrial. (1) The court must determine whether a fundamental failure occurred in the proceeding; if so, (2) the court must assess whether the trial can continue without injustice. *State v. Ward*, 292 Kan. 541, Syl. ¶ 1, 256 P.3d 801 (2011). In some instances, a limiting instruction or jury instruction may lessen or cure the prejudice that occurred. If those actions would not do so, the court must decide whether the conduct is such that it results in injustice—that is, whether the conduct deprived the parties of a fair trial. *State v. Armstrong*, 299 Kan. 405, 442, 324 P.3d 1052 (2014); *Ward*, 292 Kan. 541, Syl. ¶ 1.

Both assessments involve the exercise of the district court's discretion. Thus, appellate courts review the denial of a motion for a mistrial for an abuse of discretion. 292 Kan. at 550-51. A court abuses its discretion when no reasonable person would adopt the court's decision. 292 Kan. at 550.

Kansas caselaw contains multiple instances where appellate courts have upheld the denial of a mistrial when potential jurors reference a defendant's prior crimes or unfavorable conduct. For example, *State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014), involved the denial of a mistrial after a prospective juror indicated she knew the case was gang related. The Kansas Supreme Court affirmed, even though there was no

9

limiting instruction given and the potential juror was not dismissed for cause, because the statement was brief and the topic was not brought up again. 299 Kan. at 146; see also *State v. Angelo*, 287 Kan. 262, 285, 197 P.3d 337 (2008) (no error in denying a mistrial when the defendant's wife mistakenly testified the defendant had previously been charged with attempted murder instead of aggravated battery); *State v. Mayberry*, 248 Kan. 369, 380-81, 807 P.2d 86 (1991) (prospective juror's statement that he knew of the defendant's previous conviction did not deprive defendant of a fair trial), *disapproved of on other grounds by State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006).

Here, the district court did not explicitly state whether, in its judgment, the potential juror's statement regarding Daniels' previous drug use resulted in a fundamental failure in the proceeding. But even assuming such a failure occurred, the steps the district court took to remedy any problems the statement may have caused were reasonable—that is, not an abuse of discretion. See *Ward*, 292 Kan. at 550. In particular, the court dismissed the juror for cause and gave a limiting instruction to the remaining jury pool, underscoring the presumption of Daniels' innocence and the jurors' obligation to consider only the evidence, not "idle remarks" of potential jurors. Daniels does not argue the other jurors ignored this statement of the law. The district court did not abuse its discretion when it decided to proceed in this manner in lieu of dismissing the jury pool.

The district court did not err when it denied Daniels' motion for a mistrial.

Affirmed.

10