NOT DESIGNATED FOR PUBLICATION

No. 121,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ORVILLE WILLIAM SIEG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed June 11, 2021. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn M. Boyd*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

PER CURIAM: In this appeal of his convictions for possession of drugs and drug paraphernalia, Orville William Sieg raises several trial errors. He questions the sufficiency of the evidence, the failure of the court to give a limiting jury instruction, and the court's failure to limit the use of DNA evidence. Our review of the record and the law leads us to hold that none of the issues Sieg raises are reversible. Thus, we affirm his convictions.

1

*An observant officer watches, follows, investigates, and arrests.*

During the evening one night in June 2017, Officer Derek Garver was on routine patrol near 5th and Kickapoo Street in Leavenworth County. He was driving a marked police vehicle. Garver knew this was a high crime and narcotics area. He spotted a gold Chevy Silverado parked in front of a known drug residence. A man was standing outside of the passenger door of the vehicle. Officer Garver recognized this man as William Cheatham, a person he knew to distribute narcotics. He saw Cheatham walk away from the vehicle as the Silverado slowly pulled away, going northbound. The officer followed the car. The Silverado went down an alley off of 4th Street and parked with its lights off. Garver could see two occupants ducking down inside of the parked vehicle. He passed the alley and turned around. He only momentarily lost sight of the vehicle and did not see anyone exit or enter the vehicle. The Silverado left the alley without its headlights on. He observed a white female driver and a black male passenger inside. Officer Garver stopped the Silverado.

While conducting the traffic stop, Officer Garver shined a spotlight to illuminate the inside of the Silverado. He noticed the male passenger reaching forward like he was putting something under the seat or reaching for something from under the seat. Neither the driver nor the passenger had any identification. The passenger told Officer Garver that the officer already knew who he was. Officer Garver then recognized the passenger as Sieg and knew that he was someone associated with criminal activity. The officer arrested him on an outstanding warrant. While arresting him, Officer Garver noticed Sieg looking down toward the passenger floorboard. Sieg was sweating abnormally, his hands were shaking, and his pulse was elevated.

After taking Sieg into custody, Garver asked the driver, Lisa Clark, if there was anything illegal in the vehicle. She said there were a couple of syringes and a spoon inside a bag in the vehicle. She did not believe there were any narcotics in the vehicle.

Based on his training and experience, Garver knew that syringes and spoons were often used to "ingest" narcotics into the human body. Officer Garver searched the vehicle. Under the passenger seat, he found

- a teal eyeglass case that contained a glass smoking pipe with white residue on it;
- Q-tips;
- a silver spoon with white crystal-like residue on it;
- two bags containing methamphetamine; and
- some yellow pills.

He did not find any syringes.

Officer Garver confronted Clark about the items. She stated they were not hers and gestured toward the passenger seat where Sieg had been sitting. Based on his observations of what Sieg was doing when he pulled them over, along with "prior word of mouth of [Sieg's] behaviors and his associations," Officer Garver believed the narcotics belonged to Sieg.

Lori Tavis, the owner of the vehicle, arrived at the scene to take possession of her vehicle. She had previously dated Sieg. In June 2017, they dated "off and on," and Tavis had given Sieg permission to use her vehicle. Sieg had possession of the vehicle for approximately a week prior to June 4. She did not recognize the drugs or paraphernalia, but she recognized the eyeglass case.

The mouthpiece of the glass pipe was tested for DNA evidence. Among the three DNA profiles found on the pipe, one belonged to Sieg.

The State charged Sieg with possession of methamphetamine and possession of drug paraphernalia. With respect to the drug paraphernalia charge, the charging docket alleged that Sieg possessed "drug paraphernalia, to wit: a glass pipe, silver spoon, used to

3

ingest, inhale, injecting or otherwise introduce a controlled substance into the human body."

At trial, Tavis testified the eyeglass case belonged to Sieg, but she had only seen him put his eyeglasses in it. She testified she did not place the drugs or paraphernalia in the vehicle.

Clark testified that Sieg was initially driving the vehicle that evening and they had changed seats in the alley. She testified the drugs and paraphernalia did not belong to her. Sieg testified, denying ownership of the teal eyeglass case. The jury found Sieg guilty as charged.

Sieg raises several trial issues in this appeal. First, he contends there was insufficient evidence admitted during the trial that proves he possessed a silver spoon to *inject* drugs into his body. Second, Sieg argues that the court erred by not giving a limiting instruction to the jury concerning Officer Garver's testimony about Sieg's prior actions because those prior actions implied he was guilty on this occasion. Next, he argues that the DNA evidence found on the glass pipe cannot be used to infer that he possessed methamphetamine. Sieg concludes his brief by arguing that all of these errors, when combined, compel reversal of his convictions. We will address those issues in the same order.

*The question of the spoon*

Pulling a term from one of the jury instructions, Sieg tries to make a claim that insufficient evidence was presented at trial. He contends the State had to prove that he possessed a spoon to *inject* a controlled substance because that was how the jury instruction was written. He contends there was insufficient evidence to show he possessed a spoon to *inject* rather than *ingest* a controlled substance because Officer

4

Garver testified spoons are "often used to ingest narcotics into the human body." He contends spoons are not used to inject narcotics.

A review of the law is helpful. It is unlawful in Kansas for any person to possess with intent to use drug paraphernalia to "store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." K.S.A. 2020 Supp. 21-5709(b)(2). "Drug paraphernalia" is defined broadly and can include spoons. K.S.A. 2020 Supp. 21-5701(f). Consistent with these statutes, Sieg was charged with unlawfully and knowingly possessing, or having under his control with intent to use, drug paraphernalia, to wit:  a glass pipe, silver spoon, used to ingest, inhale, inject, or otherwise introduce a controlled substance into the human body, in violation of K.S.A. 2016 Supp. 21-5709(b)(2).

Three jury instructions are pertinent to this argument:

Instruction No. 3 stated in part:
"The defendant is charged with unlawfully using or possess with intent to use drug paraphernalia. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant used or possessed with the intent to use a pipe and spoon as drug paraphernalia to introduce into the human body methamphetamine."

Instruction No. 4 stated:
"Drug paraphernalia means materials of any kind which are used or primarily intended or designed for use in inhaling a controlled substance.
"Drug paraphernalia includes pipes.

"Drug paraphernalia means materials of any kind which are used or intended for use in *injecting* a controlled substance.
"Drug paraphernalia includes spoons." (Emphasis added.)

5

We can see then that Sieg bases his argument upon a comment in the definition instruction.

In Instruction No. 7, the jurors were also instructed that they could use "common knowledge and experience" in any matter about which a witness testified.

The evidence on this point was clear. Officer Garver testified that spoons are used to ingest drugs into the body. He testified that when he asked Clark if there was anything illegal in the vehicle, she responded that there were a couple of syringes and a spoon. The jury was shown pictures of the spoon found in this case. The spoon had white crystal-like residue on it. Officer Garver testified the residue was consistent with methamphetamine.

The spoon was found alongside two baggies of methamphetamine and a pipe. The jurors were permitted to apply their common knowledge and experience to the evidence presented. See *State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010). Under these circumstances there was sufficient evidence. The jury could have found Sieg possessed the spoon with the intent to use it to ingest a controlled substance.

But more important on this point is that we think Sieg's argument rests on a faulty premise. Sieg was charged with possessing a spoon "to ingest, inhale, inject or otherwise introduce a controlled substance into the human body." Sufficiency of the evidence is judged based on the charging document—not the jury instruction. See *State v. Valentine*, No. 199,164, 2019 WL 2306626, at *4-6 (Kan. App. 2019) (unpublished opinion).

Valentine was charged with committing aggravated criminal sodomy by either engaging in sodomy with the victim or causing the victim to engage in sodomy with another person. The jury was instructed only on the second method of committing aggravated criminal sodomy even though all the evidence supported the first method. On appeal, Valentine raised an insufficiency of the evidence argument based on the wording

6

of the jury instruction. This court rejected Valentine's argument that the error in the jury instruction meant that there was insufficient evidence to support the crime charged. The court then determined the instructional error was harmless because if the error had not occurred the jury's verdict would have been no different. 2019 WL 2306626, at *4-6.

Sieg concedes that the State presented evidence that spoons are used to ingest controlled substances. And he does not allege that any error in the jury instruction amounted to clear error since he did not object to the instruction at trial. There are no grounds for reversal here.

*We see no need for a limiting instruction here.*

Citing K.S.A. 60-455, Sieg contends a jury instruction limiting the use of Officer Garver's testimony would have been legally and factually appropriate. None was given—and we note that none was requested. Sieg argues that the instruction was required because Officer Garver's testimony referred to Sieg's prior behavior to establish an inference that he was guilty of this crime. In Sieg's view, there is a real possibility the jurors would have reached a different conclusion had such an instruction been given because the State relied on circumstantial evidence of constructive possession.

At trial, Officer Garver was asked why he believed the drugs found in the vehicle belonged to Sieg. The officer testified, "Based on my observations of what he was doing when I pulled them over, along with the area that they were in and *prior word of mouth of his behaviors and his—his associations*, I believed that the narcotics belonged to Mr. Sieg, yes." (Emphasis added.) There was no objection.

Under K.S.A. 2020 Supp. 60-455(a), evidence that a person committed a crime or civil wrong "on a specified occasion," is inadmissible to prove the person's disposition to commit a crime on another specified occasion. Such evidence may be admissible to prove

7

some other material fact. K.S.A. 2020 Supp. 60-455(b). When the evidence is admissible to prove such other material fact, a prophylactic limiting instruction is required. But the failure to give a limiting instruction does not require automatic reversal. If the complaining party did not object to its omission, the failure to give a limiting instruction is reversible only if clearly erroneous. *State v. Gunby*, 282 Kan. 39, 56-58, 144 P.3d 647 (2006).

Because Sieg failed to object to the court not giving a limiting instruction, we apply a clear error standard—we will only reverse if an error occurred and we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. Sieg has the burden to demonstrate the necessary prejudice. See K.S.A. 2020 Supp. 22-3414(3); *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). A court must review the impact of an erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence was overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

We question whether K.S.A. 2020 Supp. 60-455(a) even applies here. The law only applies to admission of evidence that a person committed a crime or civil wrong on a specified occasion to infer a person has the disposition or propensity to commit another crime or civil wrong on another specified occasion. *State v. Molina*, 299 Kan. 651, 658, 325 P.3d 1142 (2014). Officer Garver's reference to Sieg's "behaviors and his—his associations" lacked any specificity. What behaviors? What associations? This was not evidence of a particular bad act on a particular occasion. Officer Garver was talking about Sieg's habits and associations in general.

In a different context, our Supreme Court has held evidence of gang affiliation is not evidence of a crime or civil wrong under K.S.A. 60-455—it does not apply, and no limiting instruction is required to such references. *State v. Gholston*, 272 Kan. 601, 614, 35 P.3d 868 (2001). Evidence that a defendant's gang "sometimes" commits illegal acts

8

or that gang members fight and shoot other gang members is also outside K.S.A. 60-455 because it is not evidence that a particular person committed a particular crime or bad act on a particular occasion. *Molina*, 299 Kan. at 658. And a panel of this court has held that a general reference to "drugs in his system" is not evidence of a crime on a specified occasion. *State v. Whetstone*, No. 101,157, 2014 WL 1193316, at *2 (Kan. App. 2014) (unpublished opinion).

Another case is pertinent. In *State v. Richmond*, 289 Kan. 419, 427, 212 P.3d 165 (2009), the court held the defendant's statement that he "robbed and killed people" was not evidence of a crime or civil wrong committed on a specified occasion as K.S.A. 60-455 required. There, a drug task force agent testified concerning her interview of the defendant. The defendant had been asked if he sold crack. He said no. When asked what his specialty was, "'he said that he robbed and killed people.'" 289 Kan. at 426-27.

We contrast those general comments with truly specific references. Evidence of a prior arrest is evidence that the defendant committed a prior wrong on a prior occasion. *State v. Berney*, 51 Kan. App. 2d 719, 724, 353 P.3d 1165 (2015). And evidence of prior drug use or a prior drug conviction is inadmissible to prove constructive possession. *State v. Adams*, 294 Kan. 171, 184, 273 P.3d 718 (2012).

Simply put, Sieg has not shown that the jury would have reached a different verdict had a limiting instruction been given. The State's evidence was not all circumstantial:

- Sieg was leaning over as if to put something under his seat or reaching for something under his seat when Officer Garver pulled the vehicle over;
- Officer Garver found the teal eyeglass case under Sieg's seat;
- when confronted with the eyeglass case and its contents, Clark made a gesture indicating they belonged to Sieg;
- Tavis testified the eyeglass case belonged to Sieg; and

9

- the KBI found Sieg's DNA on the pipe.

*We see no reason for a limiting instruction concerning the use of the DNA evidence.*

Combining an inference stacking complaint with his dissatisfaction with a comment by the prosecutor in closing, Sieg contends an instruction limiting the use of DNA evidence was legally and factually appropriate. He argues that because the DNA on the glass pipe may have been circumstantial evidence of a prior crime—prior drug use— there was no way to determine when the DNA was deposited. Thus, the admission of this evidence allowed the jury to impermissibly stack inferences which was worsened by the prosecutor's comment in closing, "His DNA, his drugs." If we follow his logic, the jurors were required to make a series of inferences to get from Sieg's DNA on the pipe to Sieg's possession of methamphetamine the day he was arrested. He maintains the DNA evidence could not be used to establish possession of methamphetamine.

The trouble with this intricate argument is that it ignores the fact the Sieg was charged with possession of drug paraphernalia—which included the glass pipe. His DNA evidence being found on the pipe, admittedly with DNA from two other people, went a long way toward proving he possessed the pipe.

Our statute, K.S.A. 60-455, does not prohibit the admission of evidence regarding other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the charged crime. *State v. King*, 297 Kan. 955, Syl. ¶1, 305 P.3d 641 (2013). Here, the DNA evidence was not a general admission by Sieg of having used drugs in the past, but evidence of his possession of the *particular* pipe found in this case. It was direct evidence of the charged crime of possession of drug paraphernalia.

The jury was not encouraged nor required to stack inferences to conclude that Sieg possessed the methamphetamine. We see no need for a limiting instruction on this point. There is no clear error here.

When we take a close look at the prosecutor's comments, we see no error. In closing arguments, the prosecutor went over all the factors the jury could look at to determine Sieg possessed the items:

- Officer Garver saw a known drug dealer standing at the passenger side of the vehicle where Sieg had been sitting;
- Clark made a gesture indicating the drugs belonged to Sieg;
- Sieg looked down toward the passenger floorboard while being arrested;
- Sieg was nervous;
- the drugs were found under Sieg's seat;
- Sieg had possession of the vehicle for days;
- the eyeglass case belonged to Sieg;
- Sieg's DNA was found on the pipe; and
- the pipe was right next to the methamphetamine.

Then the prosecutor said, "His glass case, his DNA, his drugs." All those circumstances supported the inference that Sieg possessed the drugs. The prosecutor did not err.

We need not address Sieg's accumulated error argument since there are no errors to accumulate.

Convictions affirmed.