NOT DESIGNATED FOR PUBLICATION

No. 125,337

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON LARON TURNER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed June 28, 2024. Affirmed.

*Aaron L. Turner Sr.*, appellant pro se.

*Garett C. Relph*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: This is a direct appeal by Aaron Laron Turner Sr. of his convictions of four counts of aggravated robbery and three counts of criminal possession of a firearm. He makes several pretrial and trial error claims. We find no reversible errors and thus affirm.

1

*An investigation of three aggravated robberies at three stores leads to the arrest of Aaron Turner.*

Over the course of about a month, a string of three armed robberies occurred in Kansas City, Kansas. A pattern emerged as detectives investigated the robberies—the suspect was a light-skinned black male wearing a black or gray shirt/hoodie with a gray hood, black or dark-colored pants, black shoes or brown boots, a black cap turned backwards, and a dark-colored mask covering the suspect's nose and mouth. The robber used a dark-colored pistol-grip machine gun in each robbery.

*Robbery #1: Advanced Auto Parts Store on March 1, 2021*

The first robbery occurred at an Advance Auto Parts Store. Irene Carillo-Hernandez, the general manager working then, testified that a black man entered the store, pointed an "uzi" firearm at Carillo-Hernandez, and demanded the money from the cash register drawer. She testified that this man was wearing black pants and black shoes. She also testified that he wore a black jacket with a white shirt underneath and his head and face covered by a black and white mask.

The man directed Carillo-Hernandez to give him the money from the cash register drawer and commanded her to "Move. Fast. Fast." She complied and the robber took the entire drawer and the hundred dollar bill that was underneath the cash register. Carillo-Hernandez reported that the robber took $320.41 in total. She testified that she was very scared because the man pointed a weapon at her.

*Robbery #2: Dollar Tree Store on March 25, 2021*

In the early morning of March 25, 2021, a masked man entered a Dollar General Store in Kansas City, Kansas. The man wore black pants, brown boots, a grey hoodie, a

jacket, and a hat. The assistant manager, Jamie Kenney, first interacted with the man. He walked behind the sales counter, drew a pistol-grip machine gun, and grabbed a money till from a register that Kenney had recently opened. He then demanded the money from a second closed register.

Unaware of the robbery in progress, the manager—Mary Kay Gunderson—walked behind the sales counter. The robber demanded that Gunderson open the store safe. Gunderson told the robber that Kenney would have to open the safe. Gunderson relayed an ID code to Kenney, and they opened the safe. The robber emptied the second register and the safe and left the store. As he left, he told Gunderson and Kenney to "[h]ave a nice day, ladies."

The robber took between $4,000 and $5,000 from the store, including a cash balancing slip that Kenney had initialed. Surveillance video showed the robber arriving and leaving in a red Chevy sedan that was parked across the street in a lot during the robbery.

At trial, Gunderson identified Turner as the robber; she recognized him by his eyes.

*Robbery #3: Dollar General Store on April 5, 2021*

In the early afternoon of April 5, 2021, a masked man entered another Dollar General Store in Kansas City, Kansas. Jorim Thomas, the cashier, was attending to a customer when "somebody came inside and tried to get [his] attention." This person was dressed in similar clothing as the robber in the two previous robberies and was armed with a pistol-grip "uzi" machine gun. The man went behind the cash registers, pointed the gun at Thomas, and demanded Thomas take the drawer out and place it on the counter. As Thomas complied, the robber demanded Thomas open the store's safe. As Thomas

3

told the robber that he could not open the safe, the store manager—Kailey Vanarsdall—intervened.

The robber turned his attention to Vanarsdall, pointed his gun at her, and ordered Vanarsdall to open the safe. Vanarsdall explained that the safe was on a 15-minute time delay, so she could not open the safe for another 15 minutes. Accepting this explanation, the robber ordered Vanarsdall to open a third cash register. Vanarsdall complied and the robber left the store with about $400 in cash and rolled coins from the cash registers.

Like the prior robbery, the robber told Vanarsdall to have a good day as he left the store. Vanarsdall testified that she felt "[a] little bit pissed off" because there is "[n]othing like having a gun to your face and then, 'Have a great day.'" As the robber left, Vanarsdall saw him drive away in a red Chevy sedan with a dent on the passenger side.

While responding to the scene, Sergeant Kaitlyn Carter and Officer Ryan Haydok saw a red car matching the witnesses' description. Carter attempted to stop the car, but the driver accelerated and a high-speed chase followed. After reaching speeds of 120 mph on Interstate 70 highway, Carter terminated the chase for public safety reasons. Carter was, however, able to discern a partial temporary license tag from the car.

With the partial temporary tag information, Officer John Varriano was able to ascertain the full tag number by using a license plate reader. The reader uses cameras throughout Kansas City, Kansas, and takes a picture of every vehicle's tag as it goes through certain intersections. Using the reader, Varriano identified multiple vehicles matching the partial temporary tag observed by Carter. Of those vehicles, there was only one car that matched the one seen at each robbery and observed by Carter. Varriano entered the car's full tag into a police database and determined Aaron Turner owned the car.

Based on this information, an attempt to locate flyer went out to all Kansas City, Kansas police officers along with Turner's information and photos of the vehicle. Shortly after, Kansas City, Missouri officers notified Detective Jeremy Shepard that they had stopped a red Chevy Malibu bearing damage to the passenger side, and Aaron Turner was driving the vehicle. Shepard responded to the scene and requested a vehicle tow for evidentiary purposes. In plain view, Shepard saw clothing matching what was worn by the suspect in all three robberies. In a search incident to Turner's arrest, officers found a roll of coins matching the ones used by the robbed stores. Officers executed a search warrant of the vehicle and found the clothing matching the robber's clothing, along with another roll of coins in the center console of the vehicle.

Officers recorded an interview of Turner, where he denied any involvement with the three aggravated robberies and stated he did not wish to speak with police any further, which ended the interview.

The evidence found in Turner's car revealed his home address as an apartment on NW Harlem Road, Kansas City, Missouri, which prompted further investigation by Shepard and Detective Steven Lee. At the apartment complex, officers met with two of the complex's managers. The managers advised that on the day of the second robbery, Turner paid his rent—about $180 or $200—with only five dollar bills. Based on the information obtained by the officers, Shepard contacted Kansas City, Missouri officers to complete a search warrant for Turner's apartment. Detective Peter Neukirch used the probable cause statement prepared by Shepard and obtained a search warrant. Neukirch requested help from the KCK officers, and the two departments conducted the search jointly.

The search resulted in more clothing that matched the clothing worn by the robber in all three robberies, a VMAC .45 machine gun-type pistol called an "uzi," $500 in cash, rolled coins, and a balancing register slip bearing Kenney's initials.

The officers' investigation also led them to Amy Haning, who was employed by Credit Motors Automobile Acceptance. Turner financed a loan with the company and purchased his vehicle. His loan payments were $90 due weekly. One such payment was tendered in cash on the day after the first robbery. Turner also made several more cash payments in the weeks following.

Haning also provided officers with GPS tracking information, which was ascertained from the company's regular practice of equipping each vehicle with GPS monitoring. The GPS uses satellite imagery to find the vehicle's location. The location reported by the GPS revealed that Turner's vehicle was at an address on North 46th Street, Kansas City, Kansas, at 1:31 p.m. That location was about a four-minute drive from the Auto Parts store at the same time the robbery occurred.

With all of this information and evidence, the State charged Turner with four counts of aggravated robbery—all severity level 3 person felonies—and one count of eluding a police officer, a class B nonperson misdemeanor. Amendment to the complaint added three more counts for criminal possession of a firearm, all severity level 8 person felonies.

The jury found Turner guilty of five counts of aggravated robbery—one count was added before the case was submitted to the jury, but the sentencing court later dismissed the conviction—and three counts of criminal possession of a weapon.

The court imposed a 351-month prison sentence with a 36-month postrelease supervision term.

Turner claims seven pretrial and trial errors:

(1) The district court abused its discretion in denying Turner's motion to suppress evidence because the search and seizure was illegal;

(2) the district court abused its discretion in denying Turner's motion to suppress because of falsehoods made in the affidavit seeking the issuance of a search warrant;

(3) his several convictions for criminal possession of a firearm were multiplicitous;

(4) the sufficiency of evidence for the Gunderson aggravated robbery conviction;

(5) the district court erred in denying his motion in limine seeking to bar admission of items found in his car because they were irrelevant;

(6) the trial court erred in allowing a victim's in-court identification at trial;

(7) the perjury of a witness prejudiced the jury's verdict; and

(8) prosecutorial error deprived him of a fair trial.

We will address the issues in that order.

*We find no error in the court denying Turner's motion to suppress.*

Turner argues that the district court erred in denying his motion to suppress evidence because in his view the police illegally searched and seized evidence found in his apartment. He claims these acts were unconstitutional because the officers failed to follow the procedures outlined in K.S.A. 22-2401a.

According to Turner, because his apartment was in Missouri, Kansas City Police Department officers could exercise their authority only if they were in fresh pursuit or if a request for assistance was made by the Missouri officers. Turner points to the interview of his apartment managers. During the interview, the managers voluntarily and independently changed the locks of Turner's apartment.

When they changed the locks, the Kansas police officers stayed with them and were able to peer into the apartment without crossing the threshold of the doorway. Based on the Kansas officers' request, Detective Neukirch, a Kansas City, Missouri police

7

officer, applied for a search warrant that same day. The next day, officers executed a search warrant at Turner's apartment in Kansas City, Missouri. Turner made this argument before the district court several times.

We examine this question from two viewpoints: the facts and the law. We must ask if the district court's findings of fact supported by substantial competent evidence, and then we review de novo the district court's ultimate legal conclusion. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). Substantial competent evidence is "that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019). We will not reweigh the evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016)

When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

*Turner's view of the exercise of police powers is flawed.*

Basically, Turner argues that the Kansas officers violated the Fourth Amendment to the United States Constitution and K.S.A. 22-2401a when they crossed into Missouri to investigate Turner's apartment. He argues that the statute limits the jurisdiction of city police and sets forth a criterion for police to use their "police powers" outside the city that employs only twice: (1) when in fresh pursuit, (2) when a request for assistance has been given made by the officers of that jurisdiction.

Turner misstates the law and fails to meaningfully dispute that substantial competent evidence supported the district court's decision. Under Kansas statutes and

8

caselaw, Kansas officers may exercise the powers and authority of their office outside their jurisdiction. See *State v. Grissom*, 251 Kan. 851, 909, 840 P.2d 1142 (1992) (Kansas officers participating in execution of search warrant with Missouri police).

The district court heard Turner's argument in one of several pretrial motions hearings and denied Turner's motion to suppress. In its decision, the district court listed the evidence it relied on to make its ruling:

> "the search warrant that was utilized, which is Exhibit C. The affiant or application was Detective Neukirch. It was issued to any peace officer in Missouri.
>
> "Based on the testimony and based on that exhibit, it appears Detective Neukirch at least prepared and he signed the search warrant return.
>
> "The search warrant affidavit, which is Exhibit D, Detective Neukirch was the affiant for that affidavit. His testimony was that he was contacted by the Kansas City, Kansas, Police Department and asked for his assistance. He completed the search warrant for them. As I said, it did not list any specific officers but only peace officers.
>
> "He took that probable cause statement and presented it to a Clay County judge. He was—obtained a search warrant. He requested—his testimony was he requested assistance from Detective Shepard, a Detective Lee, and a CSI officer. He used them to assist him. He was present during the search. He was with the detectives during the search. He testified it was a joint operation in that they recovered certain property that is listed on the return for the search warrant.
>
> "Detective Shepard testified that he asked for assistance, that he was the one who reached out to Detective Neukirch, that it was the detective who obtained the search warrant, and that he was present during the—and part of the—conducting the execution of that search warrant."

The record supports each of those findings. Once the Missouri search warrant was issued, the Missouri police asked for assistance from the Kansas City, Kansas officers. That complies with the statute, K.S.A. 22-2401a.

9

Because the district court's decision was supported by substantial competent evidence and made no legal error, we affirm.

*Did the police make a material misrepresentation on the application for a search warrant?*

Turner argues that the district court erred in denying his motion to suppress for a *Franks* violation. See *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). He contends that Detective Shepard made material misrepresentations or false statements that formed the basis for the grant of a search warrant for Turner's apartment. He claims the GPS pings that showed Turner's vehicle about four minutes from the scene of the first robbery on March 1 at 1:31 p.m. created an impossibility for the suspect to be two places at once. This means that Shepard's statements were false and therefore rendered the warrant invalid and violated his Fourth Amendment rights against unreasonable searches and seizures.

For various reasons, search warrants are presumed valid. Generally, the facts contained within an affidavit used to obtain a search warrant may not be disputed by the party against whom the warrant is directed. The United States Supreme Court, however, has provided an exception to the rule that a party may not dispute facts contained in an affidavit in *Franks*, 438 U.S. at 171. Under the exception,

> "an evidentiary hearing is required if a defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable in that it: (1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact." *State v. Adams*, 294 Kan. 171, 179, 273 P.3d 718 (2012).

10

A *Franks* motion is brought by the party against whom a search warrant is directed that alleges the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth. See *State v. Jacques*, 225 Kan. 38, 42-44, 587 P.2d 861 (1978).

If a defendant makes an initial showing that the affidavit is questionable, then the district court must first remove the challenged portions of the affidavit and consider whether the remaining portions provide sufficient evidence of probable cause. If the amended affidavit establishes probable cause, then the challenged statements were not "material" and no evidentiary hearing is required. If, however, there is not sufficient content in the amended affidavit to support probable cause, an evidentiary hearing is necessary to establish whether the affiant deliberately omitted a material fact, deliberately made a false statement, or made a statement with reckless disregard for the truth. *Adams*, 294 Kan. at 179.

A reviewing court's determination of whether a search warrant supplies probable cause requires consideration of the totality of the circumstances presented, and then the court must make "'a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation omitted.]" *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016).

If an evidentiary hearing is held on a *Franks* challenge as the district court did here, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence and the district court's ultimate legal conclusion is reviewed de novo. *Adams*, 294 Kan. at 179-80; see *Franks*, 438 U.S. at 171-72.

*We agree with the district court and find no material falsehoods in the affidavit.*

The district court took evidence on this claim. At that hearing, Detective Shepard and Sergeant Carter testified about the investigation of the three aggravated robberies and the arrival at probable cause to request a search warrant for Turner's apartment. Based on the testimony and consideration of both parties' arguments, the district court denied Turner's motion to suppress.

The district court commented on Turner's claim that Shepard's affidavit regarding the GPS pings contained material misrepresentations or false statements. The court stated that this issue was not cut and dried:

> "I believe that Detective Shepard's testimony—and what I'm focusing on here would be that page 5, Paragraph 3, regarding these pings. What he testified was that he could not testify to the accuracy of that information. He couldn't say that those were the actual times. There's been no testimony by anyone regarding that exhibit, that those times are the actual times. But even if I remove it—and he admitted that it was a mistake that he—however, he did put in here 'approximate.' But even if I remove that part of it, there's still plenty of probable cause for a district court judge to find probable cause in this case. Those pings are not the end-all of what's contained in this Information."

The district court then reviewed the evidence supporting a probable cause finding, even if the challenged statements were removed:

> "The information required in here—there is plenty of information regarding the first robbery of a person who committed the offense: what type of vehicle they were driving, the fact that they were seen in a red Chevy vehicle, they were seen wearing similar clothes in—the officer's testimony; while you argue that there's no report, their testimony was she got a personal tag. You've not shown that any of her information that Detective Shepard placed in here was incorrect."

12

The district court continued that the

> "information, with the—what was run by that Officer Varriano, which is on page 5, in
> and of itself establishes at least probable cause because that information in that paragraph
> establishes a car that has very similar—and a judge who's reading it would see that and
> see that it has very distinct damage to it similar to the car that was—that was observed by
> witnesses. And it was registered to a person by the name of Aaron Turner, which they
> then ran your information—or ran that person's information, and it showed that person to
> be matching the basic description by multiple witnesses.
>
> "So again, if I take out that part—you can argue that that information, the GPS,
> establishes that that car couldn't have been at the robbery, but I'm not—that's not the—
> the issue here is, is there deliberate reckless information placed in here that would have a
> judge not issue a warrant? And even if that's taken out, take that paragraph out about the
> pings, then—and that's only really taking out not the entire paragraph. That's only taking
> out the last few sentences."

Finally, the district court denied Turner's motion, finding that Turner failed to
establish a deliberate or reckless attempt by Shepard to mislead a magistrate into issue a
search warrant:  "So based on the information, even if I take out what Detective Shepard
indicated was a mistake, there's plenty of probable cause. And I don't find that there's
been a deliberate or reckless attempt by Detective Shepard. So your motion is denied."

*The district court's denial of Turner's motion to suppress based on an alleged*
Franks *violation was supported by substantial competent evidence.*

Turner fails to show us that the district court's decision lacked substantial
competent supporting evidence. The timing of the pings was not exact, and even if the
GPS information were removed from the affidavit, there was still enough information in
the affidavit to obtain a search warrant. The district court heard testimony from two

13

officers and relied on the appropriate standard for motions to suppress based on *Franks* violations.

We will not reweigh the evidence, nor will we assess the credibility of witnesses, and we will not resolve any conflicting evidence. *State v. Vonachen*, 312 Kan. 451, 463-64, 476 P.3d 774 (2020). Even so, Turner fails to point to a specific part of the affidavit which contains any false statements or material misrepresentations.

The court's ruling is correct.

*We find no multiplicitous firearm possession convictions.*

Turner argues that because his convictions for criminal possession of a firearm were based on the same firearm used in the three aggravated robberies and because he never relinquished control of that firearm, it was all one continuing transaction. Therefore, his three convictions for criminal possession of a firearm were multiplicitous and violated his constitutional rights. We do not think that Turner understands the doctrine of multiplicity.

A defendant has the right to be protected against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *State v. Schoonover*, 281 Kan. 453, 463, 133 P.3d 48 (2006). Turner's claim falls under the third category. Therefore, we must decide whether the State charged Turner with multiple counts of the same offense. See *State v. Dale*, 312 Kan. 174, 178, 474 P.3d 291 (2020). We do not think it did.

Basically we must ask whether the charges arose from "discrete and separate acts or courses of conduct" or "unitary conduct arising from 'the same act or transaction' of a

14

'single course of conduct.'" *Dale*, 312 Kan. at 178 (quoting *Schoonover*, 281 Kan. at 464). Such an inquiry is aided by four factors:

"1. Did the acts occur at or near the same time?

2. Did the acts occur at the same location?

3. Is there a causal relationship between the acts or was there an intervening event?

4. Did a fresh impulse motivate some of the conduct?" *Dale*, 312 Kan. at 179.

The obvious answer to questions one and two is no and to questions three and four is yes.

Next we must see whether the convictions arise from the same statute. *Schoonover*, 281 Kan. at 497-98; see *Dale*, 312 Kan. at 180. We must say that they do. That means the next step of the analysis is to consider whether "'[b]y statutory definition are there two offenses or only one' by use of the unit of prosecution test." *Dale*, 312 Kan. at 184. That test employs the statutory definition of the crime to ascertain the legislative intent for the allowable unit of prosecution. 312 Kan. at 184. This analysis is "not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed." *Schoonover*, 281 Kan. at 471-72.

There is no evidence in this record that shows Turner's convictions for criminal possession of a firearm were based on unitary conduct or continuing transaction. Turner's conduct was anything but a continuing transaction. First, each instance where Turner used a gun in furtherance of an aggravated robbery occurred on three dates: March 1, March 25, and April 5. Second, Turner used a gun in an aggravated robbery of three locations: Advance Auto Parts store, Dollar General at 6028 Leavenworth Road, and Dollar General at 6448 Kaw Drive. Third, there is no evidence of a causal relationship between the three aggravated robbery locations and sufficient time passed to generate a fresh impulse when Turner robbed the subsequent stores.

15

The district court correctly denied Turner's motion to dismiss based on this claim. There is no error here.

*Sufficient evidence supports the Gunderson aggravated robbery conviction.*

Turner challenges the sufficiency of the evidence supporting his conviction for the aggravated robbery of Gunderson.

We will approach that question in several ways. We review sufficiency of evidence challenges in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We will not reweigh evidence, resolve conflicts in the evidence, nor will we pass on the credibility of witnesses. See *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). The burden on the challenging party is a high one, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt" will reversal result. *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

In specific cases, when the jury acts as the fact-finder, we look at both the quantity and quality of the evidence supporting a jury's verdict. Verdicts supported by circumstantial evidence are sufficient if the evidence provides the fact-finder with a basis for a reasonable inference. Circumstantial evidence need not exclude every reasonable conclusion to be sufficient. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021); see also *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017) (circumstances used to infer guilt must be proved and cannot be inferred or presumed from other circumstances). There is no legal distinction between direct and circumstantial evidence in terms of their respective probative value. *Aguirre*, 313 Kan. at 209.

Turner's convictions for aggravated robbery arise under K.S.A. 2020 Supp. 21-5420(b). Under that statute, the State must prove that Turner knowingly took "property

16

from the person or presence of another by force or by threat of bodily harm to any person" and Turner "was armed with a dangerous weapon or . . . inflicts bodily harm upon any person in the course of such robbery." K.S.A. 2020 Supp. 21-5420(a) and (b).

The jury had sufficient evidence to convict Turner of the aggravated robbery of Gunderson. First, Gunderson testified that she was commanded to enter her code into a second cash register, after Turner emptied the contents of another register through Kenney, and Turner emptied the cash or coin rolls inside the second register. Then Turner demanded Gunderson and Kenney at gunpoint to open the store's safe. Turner stole about $4,000 total from the store. Gunderson also identified Turner as the man that robbed her store based on recognition of his eyes.

Given the standard of review for sufficiency challenges and taking the evidence in a light most favorable to the State, there was sufficient evidence for a jury to find Turner guilty beyond a reasonable doubt for the aggravated robbery of Gunderson. See *Aguirre*, 313 Kan. at 209.

There is no reversible error here.

*Turner's motion in limine was properly denied.*

Turner argues that the district court erred by denying his motion in limine to exclude four categories of evidence: (1) a gun; (2) clothing found in Turner's apartment; (3) money, cash, and coin rolls; and (4) any reference to a car or anything found in the car.

He claims the evidence was irrelevant and prejudicial to his defense. This reflects his fundamental argument that since he was not caught at the scene of any of the three robberies—let alone caught with a gun—he cannot be found guilty. He argues that the

17

"firearm was found in Missouri with no tangible wa[y] of saying that this was the weapon used in any crime [*sic*] whatsoever."

We must take several steps to resolve this issue. First, we must determine the relevance of the challenged evidence—whether the evidence is probative and material. The district court's determination that the evidence is probative is reviewed for an abuse of discretion; the court's determination that the evidence is material is subject to de novo review. *State v. Knox*, 301 Kan. 671, 688, 347 P.3d 656 (2015).

If the evidence is relevant, we then determine de novo which rules of evidence or other legal principles govern the admission of that evidence. Appellate review of the district court's application of the pertinent legal rules and principles depends on whether the rule or principle permits the district court to exercise its discretion or whether the rule raises questions of law. *State v. Frierson*, 298 Kan. 1005, 1015, 319 P.3d 515 (2014).

Next, we must consider whether the district court abused its discretion in weighing the probative value of the evidence against the potential that the evidence will unfairly and prejudicially surprise a party who has not had reasonable opportunity to anticipate the evidence. *Frierson*, 298 Kan. at 1015-16.

*There is no abuse of discretion here.*

When dealing with questions of evidence, two issues always arise: relevance and persuasiveness, which we call weight. In jury trials, the judge determines relevance and the jury determines weight. In this trial, Turner objected to several pieces of evidence falling into four categories contained in his motion: the gun, money, clothing, and the car.

18

The trial court overruled his objections after making a meaningful review of the basis for his objections. For example, in the trial court's consideration of the photographs of the gun found in Turner's apartment, the court reviewed those photographs; the testimony of the witnesses of all three robberies; and the similarity of the gun to those witnesses' descriptions. The court found the photographs were relevant, leaving it up to the jury to decide the weight to give to the evidence. And, the court found that the probative value outweighed any undue prejudice to Turner.

On Turner's argument that any reference to his car was inadmissible because it was irrelevant given that Turner was never arrested at the scene of any of the crimes, the court determined that fact did not make the evidence irrelevant. Instead,

> "[i]t goes to a material disputed fact, which is whether that car was utilized in these three alleged robberies. And at this point it is relevant, and the probative value outweighs any undue prejudice to you. You can argue whatever you want to the jury about that, what you're arguing to me or regarding that. But it doesn't make the evidence relevant -- irrelevant, not relevant. So I'm going to overrule your objection."

After all, the robber did get to the scene of the robberies and left the scene by car.

The trial court determined that evidence which Turner sought to exclude from admission at trial was relevant and that the probative value outweighed any undue prejudice. The evidence was relevant to the issues that the jury had to decide. We hold that the trial court did not abuse its discretion. We affirm the trial court's decision.

*We see no reversible errors in the admission of the in-court identification of Turner by two witnesses.*

Turner argues that Gunderson's identification was improper because she did not make the same identification during Turner's first trial—which ended in a mistrial—or

the preliminary hearing. He also argues that Carillo-Hernandez identified him at the first trial but did not make the same identification during his preliminary hearing or his second trial.

What weight the jury gives in-court identification evidence is up to the jury. An in-court identification can be made even if there has been no out-of-court identification. But what weight the jury gives is up to them.

The trial court cautioned the jury about the consideration of eyewitness identification from a pattern instruction:

"The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove he has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you should determine whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

"1. The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting;
"2. The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence;
"3. Whether the witness had observed the defendant on earlier occasions;
"4. Whether a significant amount of time elapsed between the crime charged and any later identification;
"5. Whether the witness ever failed to identify the defendant or made any inconsistent identification; [and]
"6. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification."

See PIK Crim. 4th 51.110 (2022 Supp.).

The court carefully instructed the jury on the proper factors to consider for deciding the reliability of such identifications. Appellate courts presume that juries follow their instructions. *State v. Kleypas*, 305 Kan. 224, 279, 382 P.3d 373 (2016).

We see no abuse of the trial court's discretion by allowing Gunderson's and Carillo-Hernandez' identifications in Turner's trial. This is especially so because the court gave the correct and appropriate jury instruction.

We affirm on this point.

*Turner has not shown us any record of perjured testimony.*

Turner revives his argument from his trial and subsequently from his motion for a new trial that one of his aggravated robbery convictions was achieved through the perjured testimony by Gunderson. The alleged perjured testimony consisted of Turner's belief that Gunderson testified that her manager was Kailey Vanarsdall. But Vanarsdall was the manager of another store and could not have been present at the second robbery. Turner appears to be confused as to Gunderson's testimony at trial because the record reveals that Gunderson never testified to having a manager or supervisor at all. Instead, Gunderson testified that she was in fact the manager of the store and Jamie Kenney was her assistant manager.

Turner claims in his supplemental corrective brief that this court needs to review the digital recording, claiming that there are parts of the record missing which need to be added and heard. Though, it was Turner's burden to designate the record that established his claimed error. See Supreme Court Rule 6.02(a)(4), (a)(5) (2024 Kan. S. Ct. R. at 36) (appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error must be supported with specific citations to the record on appeal). While some leeway is inherently permitted for self-represented litigants, this

21

issue was raised by Turner at trial twice and the trial court informed Turner that there was no testimony by Gunderson that supported his objections.

Without Turner's designation to a part of the record which establishes his perjury claim, we must presume the district court's action was proper. See *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021). Thus, this claim for want of proof in the record fails.

*Turner fails to show prosecutorial error.*

In Turner's argument, he claims that the prosecutor "presented to the jury a gun, with the inference that the appella[n]t possessed a gun during robbery here is a gun convict the appella[n]t because of it. The charge is criminal possession of a firearm. 'Hint, Hint.'" Turner believes this was erroneous and caused him to be placed "in a paradox impossible to escape while undermining his presumption of innocence."

Turner's argument is neither supported by the record nor by law. He argues that the "elements of criminal possession of a firearm is to have been caught during the commission of a crime with the firearm and relinquished possession of it." It appears Turner is arguing that the prosecutor misstated the law, that the complaint was defective, and his convictions for criminal possession of a firearm were not supported by sufficient evidence.

The prosecutor made no such implications. She told the jury that the witnesses and video showed that the suspect had a gun while committing the robberies. Then, she pointed out a gun was found during the search of Turner's apartment and Turner was prohibited by law from possessing a firearm.

The complaint appropriately charged Turner with the correct elements of criminal

22

possession of a firearm and the prosecutor did not err in describing that crime to the jury. The record reveals no error in the prosecutor's arguments to the jury regarding the criminal possession of a firearm charges. The prosecutor accurately stated the law, used facts supported by the evidence, and did not inflame the passions of the jury nor did the prosecutor imply that the jurors could ignore Turner's constitutional right to a presumption of innocence.

We find no error here.

After reviewing the record, we hold there are no reversible errors found in this appeal.

Affirmed.